## THE CRYSTAL STREAM.[1]

### MALLORY v. THE CRYSTAL STREAM.

(*District Court, S. D. New York.* November 18, 1885.)

**1. MARITIME LIEN—FREIGHT AGENT—SERVICES.**

The services of an agent employed by a charterer to solicit freight are not directly connected with the navigation of the ship, nor do they, like a stevedore's services, aid her in discharging any maritime obligation, and hence are not distinctly maritime, but of that preliminary character which does not raise a lien on the vessel.

**ω. SAME—STATEMENT OF CASE.**

The owners of the steamer C. chartered her to H., who was to pay all expenses of navigation. H. employed libelant to solicit freight. The boat being subsequently returned to her owners, and libelant remaining unpaid, this suit was brought by him against the steamer for the value of his services. *Held,* that the services were not maritime in character, and created no lien on the vessel.

In Admiralty.

*Hyland & Zabriskie,* for libelant.

*Alexander & Ash,* for claimant.

BROWN, J. The libelant sues for $42.50 wages for services rendered to the steamer Crystal Stream from May 2 to May 19, 1885. The steamer had been chartered a few days before by Capt. Hinman to run as a passenger and freight boat between New York and Derby, Connecticut, the captain to pay all the expenses of navigation. The libelant was employed by Capt. Hinman to solicit freight for the boat, on an agreement to pay him at the rate of $15 per week and board. The libelant's duties were chiefly to canvass among the merchants of New York and induce them to send freight by this steamer. Once or twice, under the captain's direction, he went to Connecticut by the steamer to obtain similar orders from merchants there. He also sold some tickets for a special excursion. On these trips he slept on the steamer, but not at other times. When the steamer was in New York he took his meals on board of her. He took no part in the navigation of the steamer, and had no duties on board. On the twentieth of May, the business not being successful and the liabilities of the boat not being paid, she was surrendered by Capt. Hinman to the owners, and the charter was canceled. The owners paid the liens of the seamen; but they defend against the claim of the libelant, on the ground that his services were not maritime, and constitute no lien upon the ship. As the claimants did not employ the libelant, and were under no personal responsiblity for the expenses of the navigation of the steamer while under the charter to Capt. Hinman, this action cannot be sustained unless the libelant's services were maritime, so as to be a lien upon the ship.

[1] Reported by R. D. and Edward G. Benedict, Esqs., of the New York bar.

The case is not distinguishable in principle from *The Thames,* 10 Fed. Rep. 848, in which this court decided that the services of a broker in procuring a charter for the ship were not maritime, but of that preliminary character which does not raise a lien upon the vessel. A ship broker, in procuring a contract of affreightment, procures a written contract for the shipment of an entire cargo. The libelant in this case was employed to procure from different merchants such parts of a cargo as he could induce them to send. The libelant's services were not directly connected with the navigation of the ship, nor did they directly enable her to earn freight; he merely induced merchants to send goods to the ship. All the maritime services of the ship, and all her maritime duties and obligations, began after the goods had been thus sent to the ship, and after the libelant's services had ended. This court sustains the lien of a stevedore, on the ground that in the service of the ship he assists her in discharging a maritime obligation. *The Hattie M. Bain,* 20 Fed. Rep. 389, and cases there cited. So, in the case of *The Onore,* 6 Ben. 564, a cooper's services in putting cargo on board the ship into deliverable condition were held maritime, because it was the duty of the ship to deliver the cargo in good landing order. Here the libelant's services did not enable the ship to discharge any maritime duty that she owed, and they were wholly preliminary to the maritime contract of the ship for the transportation of the cargo that he procured. In procuring merchants to send cargo by this steamer, the libelant doubtless rendered a service to the business of the ship. These services, though beneficial to Capt. Hinman, were not essentially different from those of other agents or clerks who might be employed in a permanent office on shore for the transaction of other necessary parts of the freight business. I cannot regard such services as maritime, and the libel is therefore dismissed.