DIEFENTHAL *et al. v.* HAMBURG-AMERIKANISCHE PACKETFAHRT ACTIEN-GESELLSCHAFT.

*(District Court, E. D. Louisiana.    April 20, 1891.)*

ADMIRALTY—JURISDICTION—MARITIME CONTRACTS.

A contract with the owners to supply their vessels for the period of a year with all the provisions they might require while in the port where the supplies are to be furnished, is not a maritime contract, and a court of admiralty has no jurisdiction of a suit for damages for its breach by the ship-owners.

In Admiralty.

*J. R. Beckwith* and *Jos. N. Wolfson,* for libelants.

*Farrar, Jonas & Kruttschnitt,* for respondents.

BILLINGS, J.    This is a suit in admiralty, brought by process *in personam.* The question submitted is presented by a plea to the jurisdiction. The suit is brought to recover damages for a breach of a contract. The question, therefore, is whether the contract which has been violated is maritime. The contract is fully described in the libel. The respondents were owners of a number of steamers running between New Orleans and various European ports. They made a contract, whereby it was agreed that the libelants would, for the period of one year, furnish and deliver to the respondents on board of their several vessels all the meat, eggs, and vegetables required as supplies for the passengers and crews of said boats at fixed prices. The libel further propounds that the number of respondents' boats departing within the year from New Orleans was 43; that the execution of the contract was entered upon, and two boats had been furnished with supplies, which, at the agreed prices at that season of the year, caused a loss to the libelants; and that the respondents, refusing to carry out thereafter the said contract, have caused a loss to the libelants of the full sum of $10,000. The contract, therefore, was a contract whereby the libelants agreed to sell and deliver, and the respondents, who were owners of vessels engaged in foreign commerce, agreed to purchase and receive, at enumerated prices, the supplies which such vessels might require at the port of New Orleans for the period of one year. In *Insurance Co.* v. *Dunham,* 11 Wall. 1, at page 26, the court define a maritime contract as one having reference to maritime service or maritime transactions. At page 31, the court says:

"Perhaps the best criterion of the maritime character of a contract is the system of law from which it arises, and from which it is governed."

In *The Paola R.,* 32 Fed. Rep. 174, the circuit court held, confirming the judgment of the district court, that the compressing of cotton, though done for the purpose of condensing the cotton as a preparation for the affreightment by reducing its bulk, was not a maritime contract. So, too, in this circuit it is held that the services of the stevedore are not maritime. In *Pritchard* v. *The Horatia,* Bee, 167, Judge HOPKINSON held that the court of admiralty had no jurisdiction when the transaction was on land, and the contract was for repairs, the vessel not being on a voy-

age, and the owners being represented by a consignee who had ample funds.    In *The City of London*, 1 W. Rob. 91, Dr. LUSHINGTON says:

"If a seaman has been engaged, and the owners abandon the voyage before it has been entered upon, it is urged that he must seek his remedy at common law by an action on the case.    To this position I am disposed to assent. The question would be a question of *quantum meruit;* and if this court was to take upon itself to adjudicate upon the question of *quantum* of damage sustained, it would be usurping the functions of a jury, to whose consideration the question is more particularly referable."

In *Minturn* v. *Maynard*, 17 How. 477, the court say:

"The court very properly dismissed the libel for want of jurisdiction.    There is nothing in the nature of a maritime contract in the case.    The libel shows nothing but a demand for a balance of accounts between agent and principal, for which an action of *assumpsit,* in a common-law court, is the proper remedy.    That the money advanced and paid for respondents was, in whole or in part, to pay bills due by a steam-boat for repairs or supplies, will not make the transaction maritime, or give the libelant a remedy in admiralty."

In *Vandewater* v. *Mills*, 19 How., at page 92, the court say:

"This is nothing more than an agreement for a special and limited partnership in the business of transporting freight and passengers between New York and San Francisco, and the mere fact that the transportation is by sea, and not by land, will not be sufficient to give the court of admiralty jurisdiction of an action for a breach of contract.    It is not one of those to which the peculiar principles or remedies given by the maritime law have any special application, and is the fit subject for the jurisdiction of the common-law courts."

In *Ferry Co.* v. *Beers*, 20 How. 401, the court say:

"The admiralty jurisdiction in cases of contract depends primarily upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation.    1 Conk. M. L. 19."

In *The Steamer St. Lawrence*, 1 Black, 527, the court say:

"And the reports of the decisions of this court will show that the subject has often been before it, and carefully considered, without being able to fix with precision its definite boundaries;   *   *   *    and this boundary is to be ascertained by a reasonable and just construction of the words used in the constitution, taken in connection with the whole instrument, and the purposes for which admiralty and maritime jurisdiction was granted to the federal government."

In *The Paola R.*, 32 Fed. Rep. 174, Judge PARDEE approved and followed *Leland* v. *The Medora*, 2 Woodb. & M. 109, where it was laid down that—

"Admiralty jurisdiction in contracts relates to the subject-matter.    This means the subject-matter of the contract,—that is, the thing to be done being maritime, and not the object of a contract, as a ship."

The qualification adopted by the supreme court in *Ferry Co.* v. *Beers*, *supra*, from Mr. Conkling, draws the line of admiralty jurisdiction, so far as this contract is concerned, and includes only those "touching rights and duties appertaining to commerce and navigation."    See, also, *Cox* v.

*Murray,* 1 Abb. Adm. 342, where Judge BETTS, quoting numerous authorities, says:

"Undertakings which are merely personal in their character, or which are preliminary or leading to maritime contracts, do not seem ever to have been recognized as within the admiralty jurisdiction."

This passage is quoted with approbation by Justice CLIFFORD in *Cunningham* v. *Hall,* 1 Cliff. 54 It is to be further noticed that Judge BETTS, at page 342, says that the strong current of authorities is against the jurisdiction of the admiralty tribunals over suits for "the violation of agreements to supply a vessel with stores." In *Plummer* v. *Webb,* 4 Mason, 388, Judge STORY says:

"In cases of a mixed nature it is not a sufficient foundation for admiralty jurisdiction that there are involved some ingredients of a maritime nature. The substance of the whole contract must be maritime."

This is a contract relating to the furnishing of supplies. But it is, after all, not a contract where, until the supplies are actually furnished, the contractors relied upon any ship, but upon the other contracting party. "The proximate and not the remote cause is looked to as the source of jurisdiction in admiralty." Dunl. Adm. Pr. marg. p. 44. It was not a contract for supplies for a ship, except that the wants of the 43 ships were to furnish the measure of the extent of what was to be furnished,—*i. e.,* the contract related to navigation only so far as concerned amounts. For all other purposes it was a general contract for the sale and delivery of provisions, and, according to the distinction which has been made in the cases above referred to both in England and in this country, though having ulterior reference to navigation, is still one for the refusal to carry out which, by the defendants, the plaintiffs must have their remedy in the common-law courts, and not in the court of admiralty. It need not be held that there could not be an admiralty suit in some cases where there is no maritime lien. But where the contract is for supplies, to bring it within the admiralty jurisdiction it must come within the reason that brings material-men within the dominion of admiralty courts, —*i. e.,* it must appear that the necessities or conveniences of ships in ports remote from home ports require that a credit should be given and a debt created which, though arising on land, are distinctively maritime, because necessary to maritime commerce as conducted by ships. It must begin and end in the necessities of a particular vessel for her own voyage. Where owners group together a large number of vessels, and make annual contracts for their supplies, the admiralty jurisdiction does not include them, because the reason for it does not. The objection to the jurisdiction, which it seems to me must prevail, is that this contract, though relating remotely to navigation and maritime commerce, is separated so far from them that it did not spring from the necessities of navigation, and is not within the considerations which make it essentially and distinctively maritime, and, though in part executed, is not, with reference to damages for its further non-execution, within the jurisdiction of the courts of admiralty. The exception to the jurisdiction must be maintained.