### THE HARVEY AND HENRY et al.

### SELOVER v. SCHOELLKOPF et al.

(Circuit Court of Appeals, Second Circuit. March 2, 1898.)

#### No. 43.

1. MARITIME CONTRACTS.

Contracts to be entirely performed on land are not maritime contracts, though they may be preliminary to possible contracts for maritime transportation.

2. SAME—ADMIRALTY JURISDICTION.

A contract between the owner of canal boats and brokers engaged in procuring freight, by which the brokers agree to keep an office in the city of Buffalo, and solicit freight for the canal boats, and provide such freight to the boats in the order of reporting at the broker's office, and the boatman agrees to report there whenever in Buffalo, but does not agree to go there, so that all the contract is to be performed on land, is not a maritime contract, and is not cognizable in the admiralty courts.

This cause comes here upon an appeal from a decree of the district court, Northern district of New York, in favor of libelants for damages arising from a breach of contract made between them and the owner of the canal boats. Libelants proceeded in rem in admiralty upon the theory that the contract was a charter party.

Harvey L. Brown, for appellants.

John W. Ingram, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. A charter party is a "contract in writing, by which an entire ship, or some principal part thereof, is let for the specified purposes of the charterer during a specified term, or for a specified voyage, in consideration of a certain sum of money per month or per ton, or both, or for the whole period or adventure described." Macl. Shipp. (4th Ed.) p. 354. Controversies arising upon charter parties are cognizable in admiralty because they are maritime contracts; but there are many contracts relating more or less to navigation and commerce which are not cognizable in ad-

miralty. "The distinction between preliminary services leading to a maritime contract and such contracts themselves has been affirmed in this country from the first." The Thames, 10 Fed. 848. An insurance broker's contract to procure insurance upon a vessel for a contemplated voyage is not maritime. Marquardt v. French, 53 Fed. 606. Neither is a freight agent's contract to solicit freight, nor a ship broker's contract to secure a charterer for a ship. The Crystal Stream, 25 Fed. 575; Torices v. The Winged Racer, 39 Hunt, Mer. Mag. 458, Fed. Cas. No. 14,102; Ben. Adm. § 212. "Undertakings which are merely personal in their character, or which are preliminary or leading to maritime contracts, do not seem ever to have been recognized as within the admiralty jurisdiction." Cox v. Murray (Betts, J.) Abb. Adm. 342, Fed. Cas. No. 3,304. In Plummer v. Webb, 4 Mason, 388, Fed. Cas. No. 11,233, Judge Story says: "In cases of a mixed nature it is not a sufficient foundation for admiralty jurisdiction that there are involved some ingredients of a maritime nature. The substance of the whole contract must be maritime." See, also, Diefenthal v. Steamship Co., 46 Fed. 397, and cases there cited.

The contract sued upon was entered into May 14, 1896, between the libelants, parties of the first part, and one Charles Selover, party of the second part. It recites that "the parties of the first part are engaged in the brokerage business at the city of Buffalo, N. Y., engaged as brokers for the procuring of freight for boats navigating the Erie canal"; that Selover is the owner of three canal boats named therein, navigating the Erie canal, and is "desirous of procuring freight for his said boat from the city of Buffalo, Tonawanda, and North Tonawanda, to points on said canal or east of Albany," and is "desirous of having his boat loaded in turn with other boats whose owners or managers may employ the parties of the first part as brokers." By the contract Selover agrees that "during the season of 1896 he will report his boat to the parties of the first part at their office in the city of Buffalo, or such other place as they may designate, upon his arrival in the city of Buffalo, when ready for loads, and that he will accept all loads offered to him for the boat by the parties of the first part, at the then going rates of freight." Incidentally it may be noted that Selover agrees to report and accept only when he comes to Buffalo. He does not agree to come there, and is left entirely free to take freight at Tonawanda or North Tonawanda, without availing at all of the services of libelants. Selover further agrees that he "will not, without the written consent of the parties of the first part, accept loads for his boat from Buffalo during the canal season of 1896 from parties other than the parties of the first part." This clause contains, in the printed form, the words "Tonawanda and North Tonawanda," but a marginal note in writing, duly signed, provides that "it is agreed and understood that this contract does not apply to Tonawanda and North Tonawanda." Selover further agrees that, in case he should accept loads from outside parties, he would pay $100 as liquidated damages; and that "if, after reporting his boat ready to load, he should refuse to ac-

86 F.—42

cept the load provided for his boat by the parties of the first part, he would pay for each such refusal $100 as liquidated damages." On the other side, the parties of the first part agree that they will keep an office or place where Selover "and other boat owners doing business on the Erie canal" may report to them as ready to load; that they will keep a book in which such reports shall be entered in their regular order; and that "they will solicit freight for all boats so reporting to them, and   *   *   *   will provide such freights to the boats of the party of the second part, and other boat owners reporting to them for loads   *   *   *   in the order in which said boats shall report;   *   *   *   said freights to be furnished to said boats at the then going rates; and in case said parties of the first part shall fail or refuse to furnish   *   *   * loads for his boat, when they shall have such loads, in his regular order as shown by the books," they will pay $100 as liquidated damages for each refusal. Finally, it was agreed that the parties of the first part "will solicit loads for boats other than those of the party of the second part, and that such boats will be registered with [his] when ready to load, and that all of said parties will receive the same attention and treatment." It will be observed that nothing which this contract requires to be done is to be done on the water. If it had even required Selover to bring his boats to Buffalo, it might be suggested that so much of it was maritime. But he is under no such obligation. He is to report when he comes to Buffalo, but need not come unless he chooses. So, too, the obligations of the parties of the first part are to be discharged on land. The maintaining of an office, the keeping of a book, the solicitation of freights, and the tendering of such as they may obtain to the listed boats in regular order are none of them maritime transactions, although they are preliminary to possible contracts for maritime transportation. Under the authorities above cited, it would seem that a controversy arising upon such a contract is not cognizable in the admiralty courts. The decree of the district court is therefore reversed, and the cause remitted, with instructions to dismiss the libel, with costs of both courts.