## ADLER-WEINBERGER S. S. CO. v. ROTHSCHILD & CO.

(Circuit Court, E. D. Pennsylvania.    June 8, 1903.)

### No. 92.

1. INSURANCE—LIABILITY OF AGENT FOR FOREIGN COMPANY—PENNSYLVANIA STATUTE.

Act Pa. May 1, 1876 (P. L. 53, 66), § 48, which provides that "the agent of any insurance company of any other state or government, which does not comply with the laws of this commonwealth, shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or in behalf of any such company," relates to the carrying on of the business of insurance and the making of contracts within the state, without reference to the location of the property insured, and applies to contracts of marine insurance made through an agent within the state, although the vessel insured was not at the time within the state.

2. SAME—ESTOPPEL TO DENY AGENCY—REPRESENTATIONS.

Persons issuing policies of marine insurance on behalf of an insurance company, and afterward issuing slips or permits to be attached thereto, in which they described themselves as "agents," are estopped to deny such agency, when it is sought to hold them liable as agents under a state statute.

3. SAME—CONSTITUTIONALITY OF STATE STATUTE.

A state statute, imposing a penalty for transacting business within the state as agent for a foreign insurance company which has not complied with the laws of the state, is not in violation of the Constitution of the United States, because it applies to contracts of insurance on property without, as well as within, the state.

4. SAME—ACTION AGAINST AGENT—LIMITATION.

Under Act Pa. May 1, 1876 (P. L. 53, 66), § 48, which makes the agent of any foreign insurance company which has not complied with the laws of the state personally liable on its contracts of insurance made by or through him, the liability of such an agent is statutory, and not upon the policy, and a provision of the policy limiting the time for bringing an action thereon has no application to an action against the agent.

At Law.    On motions by defendants for a new trial and for judgment notwithstanding the verdict.

Horace L. Cheyney and John F. Lewis, for plaintiff.
James C. Sellers, for defendants.

J. B. McPHERSON, District Judge.    This action is based upon section 48 of the Pennsylvania statute of May 1, 1876 (P. L. 53, 66) which is as follows:

"The agent of any insurance company of any other state or government, which does not comply with the laws of this commonwealth, shall be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or in behalf of any such company."

The undisputed facts are—I take them substantially from the brief of defendants' counsel—that the plaintiff, a citizen of Louisiana, in March, 1900, obtained the three marine policies in question through a firm of shipbrokers in New Orleans.    The vessel traded between New Orleans, Mobile, and Honduras, and was at the first-named

¶ 4. See Insurance, vol. 28, Cent. Dig. § 27.

port when the policies were written. The New Orleans brokers applied for the insurance to another firm of brokers in Tampa, Fla., who in turn applied by mail to the defendants, Rothschild & Co. The application was received at the defendants' office, 411 Walnut street, Philadelphia, and two of the policies were afterwards mailed by them from Philadelphia to the Tampa brokers, by whom they were forwarded to New Orleans. In August following the New Orleans brokers wrote to the defendants at Philadelphia for a third policy, and this was mailed directly to New Orleans. The premiums were sent by mail to the defendants at Philadelphia, and were there received. Later several slips, or permits, were obtained from them, also by mail, to be attached to the policies. On these slips the defendants described themselves as agents for the respective companies. The policies were all issued by companies foreign to Pennsylvania, and none of them had complied with the laws of that state. There was evidence that the written portion of two of the policies was in the handwriting of the defendants' bookkeeper, and had been filled in at their office in Philadelphia. It did not appear where or by whom the other policy had been filled in; but the defendants did not deny that they had prepared and mailed it in Philadelphia, nor did they deny at the trial that they were agents of the respective companies by whom the policies were issued. The loss occurred in September, 1900, and this suit was brought by the insured on February 1, 1902, under the foregoing section, to recover from the defendants the amount of the loss. A verdict for the plaintiff was directed by the court, no fact being in dispute, and the legal questions are now to be considered under the customary reserved point:

"Whether there is any evidence to go to the jury in support of the plaintiff's claim."

The first position taken by the defendants is that section 48 does not apply to policies of insurance upon property that is not within the state of Pennsylvania at the time the contract is made. I agree with the argument of defendants' counsel that the section referred to creates a liability that did not exist at common law, and imposes a penalty for disobedience. Being a penal statute, no doubt it must be construed strictly, and should not be extended beyond the evident intent of the Legislature as appears upon its face. Both the appellate courts of the state have decided that the penal provisions of the insurance laws are to be strictly construed, and that their penal intent shall be shown in clear and unambiguous words. Com. v. Biddle, 139 Pa. 605, 21 Atl. 134, 11 L. R. A. 561; Com. v. Hammer, 11 Pa. Super. Ct. Rep. 138. And this rule of strict construction has been applied to the act of 1876 itself in Com. v. Reinoehl, 163 Pa. 287, 29 Atl. 896, 25 L. R. A. 247. Nevertheless, I am unable to follow the defendants to their conclusion, that, if the rule of strict construction be applied to the section now under consideration, the result will be to find in its language a sufficiently plain declaration that it does not apply to insurance upon property not within the state. On the contrary, it says nothing whatever, and in my opinion it implies nothing whatever, concerning the location of the property to which the contracts of insurance apply, and apparently has in mind

merely the making of such contracts; that is to say, the subject of the section is the business of insurance, the carrying on of such business within the state, and does not regard the position in space occupied by the property insured.    This appears more clearly if the preceding section of the act is taken into account.    Section 47 declares that

"Any person transacting business within this commonwealth as the agent of an insurance company of any other state or government, without a certificate of authority, as required by the act to which this is a supplement [viz., act of 1873] shall be guilty of a misdemeanor," etc.

Here, too, nothing whatever is said concerning the location of the property insured.    It is the transaction of business that is made a misdemeanor and is to be punished by a specified penalty.    The conclusion urged upon the court by the defendants rests almost wholly upon the act of 1887 (P. L. 61) which (like the act of 1876) is also a supplement to the original act of 1873, and supplies section 14 of that statute.    The relevant part of the act of 1887 is as follows:

"Any person or persons, or any agent, officer or member of any corporation, paying, or receiving or forwarding any premiums, applications for insurance, or in any manner securing, helping or aiding in the placing of any insurance, or effecting any contract of insurance upon property within this commonwealth, directly or indirectly, with any insurance company or association not of this state, and which has not been authorized to do business in this state under the terms of this act, shall be guilty of a misdemeanor," etc.

It is argued that, because this act is by its terms confined to contracts of insurance upon property within the state, it must therefore be supposed that the act of 1876 has a scope no wider and should also be confined to policies upon property found within the commonwealth at the time of insuring.    It seems to me, however, that to assent to this conclusion would involve a violation of the well-known rule of statutory construction that forbids a court to limit or impair the clear and unambiguous language of a constitutional statute.    It is unnecessary to quote authorities for the proposition that, where the words used by the Legislature are capable of only one meaning, such meaning is to be given to them.    If this meaning should lead to a manifestly absurd and impossible result, other rules of construction may afford a way out of the difficulty.    Here, for example, as the defendants' counsel points out, if read literally, section 48 applies to any agent of any unauthorized foreign company, whether or not he resides within the state of Pennsylvania; and he very properly characterizes such a construction as "absurd."    But the difficulty is easily resolved by applying the elementary rule that laws are prima facie intended only for those over whom the Legislature has power, and cannot be supposed to lay burdens upon residents of other states. So far as I can see, no other absurd result would follow from supposing that the words mean precisely what they appear to mean, namely, the Legislature is forbidding all persons from carrying on within the state the business of insurance in behalf of a company that has not complied with the laws of Pennsylvania, no matter where the property may be to which the contract relates.    That such legislation is lawful and not in conflict with the commerce clause of the federal Constitution, or with the fourteenth amendment, appears

clearly, I think, from Hooper v. Cal., 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297, where the facts were substantially the same as in the case now under consideration, with the single exception that the vessel there insured was within the state of California at the time the policy issued. But, to my mind, this circumstance cannot be permitted to have the controlling importance upon which the defendants insist; for, to give it such decisive weight would result practically in nullifying section 47 of the act of 1876 and section 1 of the act of 1887, so far as contracts of marine insurance are concerned. It is well known that the great majority of marine policies are issued upon property that is out of the jurisdiction of the state in which the policy is written, the vessels being upon the high seas or elsewhere prosecuting their respective voyages. If the construction contended for by the defendants is correct, any person in the state of Pennsylvania might insure any absent vessel in foreign companies that had not complied with the Pennsylvania laws, and might insure it with impunity; the penal clauses of the acts of 1876 and 1887 to the contrary notwithstanding.

It is no doubt true that the Pennsylvania statutes concerning foreign companies were intended primarily to protect the citizens of the state from irresponsible foreign underwriters; but it is, I think, impossible to say that this was the sole object of the statutes, when the Legislature chose to use language that applies to the transaction of business generally, without regard to the place where the risk may be found, and (save in the act of 1887) does not restrict its scope to business concerning policies upon property within the state.

The defendants further contend that the issuing of these policies was not a transaction of business, and refer to People's B. & L. Association v. Berlin, 201 Pa. 1, 50 Atl. 308, 88 Am. St. Rep. 764, in support of this contention. That was a New York contract, and the case merely decides that it did not cease to be a New York contract because the loan was made to a citizen of Pennsylvania, and that the association did not thereby employ its capital within this state. It is now denied for the first time that the defendants acted as "agents" for these unauthorized companies. To this I think it is enough to reply that they deliberately described themselves as agents over their own signatures, and that the controversy would, therefore, seem to be at an end. Neither did they deny it upon the trial, or offer any evidence upon this point.

The case of Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832, is cited as authority for the further proposition that if the plaintiff's construction of section 48 is correct, it violates the Constitution of the United States. This contention is directly answered by the case of Hooper v. California, which is referred to in Allgeyer's Case, and is there distinctly approved. In Allgeyer's Case, the contract that was decided by the Supreme Court of the state to justify the fine demanded by the state was a New York contract, and not a Louisiana contract; and all that was decided by the Supreme Court of the United States was that the Louisiana statute forbidding any person to do any act in that state to effect insurance on property therein in any company which had not complied with

the state laws, under penalty of a fine, etc., would violate the federal Constitution if it should be applied to a contract of insurance made in the state of New York, with an insurance company of that state, where the premiums were paid, and where the losses were to be paid. The difference between that case and this is obvious, and need not be discussed.

The defendants' final argument is that, even if the act of 1876 should be held to apply to the policies, judgment should still be entered in their favor, because the contracts of insurance contained a provision that suit must be brought within 12 months from the date of the disaster. The position is that the act of 1876 substitutes the defendants as underwriters in the place of the companies, and that every provision of the policy, privilege as well as obligation, must be read as if the defendants had in fact issued the policies themselves. It has been decided otherwise in effect by the Supreme Court of Pennsylvania in McBride v. Rinard, 172 Pa. 543, 33 Atl. 750. That was an action upon section 48 against the agents of an unauthorized foreign company, and differs from this merely in the fact that the property insured was situated within the state. To an argument similar to that now put forward—that proofs of loss should have been made to the agents—the court said that

"The contract liability is complete the moment the loss occurs, and is payable, upon proof thereof, to [should be "by," I think] him who is answerable therefor, the agent."

The point now made has been directly decided by the Supreme Court of Alabama in Noble v. Mitchell, 100 Ala. 519, 14 South. 581, 25 L. R. A. 238. It seems to me to be clear that the defendants' contention upon this point is not sound. The plaintiff's cause of action is not upon the policies, but is given to him directly by the act of 1876, and there is no provision in that act requiring suit to be brought within any specified time.

The defendants' motions for a new trial and for judgment non obstante veredicto are overruled. An exception is granted to the refusal of the court to enter judgment.

Judgment may be entered on the verdict in favor of the plaintiff.