## RELIANCE LUMBER CO. v. ROTHSCHILD.

(District Court, E. D. Pennsylvania. January 21, 1904.)

### No. 85.

1. ADMIRALTY JURISDICTION—MARITIME CAUSE OF ACTION—SUIT AGAINST INSURANCE AGENT.

A court of admiralty is without jurisdiction of an action against an agent who issued a policy of marine insurance, brought under Act Pa. May 1, 1876 (P. L. 66) § 48, which provides that the agent of any foreign company which does not comply with the laws of the state shall be personally liable "on all contracts of insurance" made by him on behalf of such company. Such an action is not one on contract, but one to recover statutory damages for a tort committed in violating the law, and imposed for the benefit of the person injured, and is not maritime.

2. SAME—DISMISSAL—COSTS.

On the dismissal of a suit in admiralty because the cause of action is not within the admiralty jurisdiction, the court has no power to award costs.

In Admiralty.

Horace L. Cheyney and John F. Lewis, for libelant.
James C. Sellers, for respondent.

J. B. McPHERSON, District Judge. The facts of this case are not disputed, and are thus stated in the brief of libelant's counsel:

"In the month of January, 1901, the Reliance Lumber Co. of Beaumont, Texas, made application by mail to the defendant at Philadelphia, for certain marine insurance on the bark Ceres.

"The negotiations were finally consummated on February 7, 1901, when the defendant mailed at Philadelphia to the libelant at Beaumont, Texas, policy No. 7625 of the Commercial Insurance Co., and policy No. 0103 of the Lincoln Insurance Co., both insuring the libelant against marine risks upon the hull of the bark.

"Neither of the companies was authorized to do business in the state of Pennsylvania. The policies were actually written and issued at the office of the respondent in Philadelphia.

"The bark sailed from Sabine Pass, Texas, to Las Palmas on February 24, 1901, and, as the result of certain disasters, became a total loss.

"The libelant, having been unsuccessful in its effort to collect the amount of the loss from the insurance companies in whose names the policies were issued, brought this suit against the respondent to enforce the personal responsibility of the latter, under the provisions of section 48 of the act of the Legislature of Pennsylvania approved May 1, 1876 (P. L. 66), providing as follows:

" 'Section 48. The agent of any insurance company of any other state or government which does not comply with the laws of this commonwealth shall

---

¶ 1. Admiralty jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.

¶ 2. See Admiralty, vol. 1, Cent. Dig. § 807.

be personally liable on all contracts of insurance made by or through him, directly or indirectly, for or in behalf of any such company.'"

Upon a similar set of facts the defendant was held to be personally liable in a suit recently decided in the circuit court for this district—Adler-Weinberger Co. v. Rothschild 123 Fed. 145. The present action, however, is not in the circuit court, but in the district court on the admiralty side, and the only question now to be considered is whether a court of admiralty has jurisdiction of the controversy. There is no doubt of its right to entertain a suit on a policy of marine insurance, when the proceeding is taken directly against the underwriter: Ins. Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90. But in a proceeding such as this, which is not upon the policy and is not against the underwriter, I do not think the jurisdiction can be upheld. It is clear to my mind that the libelant's right to sue the respondent in admiralty must be directly given, if given at all, by the Pennsylvania statute; for, if that statute were not in existence, it would be necessary to investigate and determine the respondent's liability in accordance with the common-law rules that govern the relation of principal and agent, and the controversy could only be carried on in a common-law court. The foundation of the action against the respondent would be his misconduct, and, while for that reason he might be treated as if he were really a principal, such treatment could not alter the fact that he had never been more than an agent. Unquestionably the agent has sometimes been loosely spoken of as if he were in truth a principal, but such language does no more than express the rule that the contract which was the occasion for his wrongdoing as agent shall furnish the measure of liability for his tort. No doubt he might be sued in assumpsit on his implied promise as principal, the tort being waived, but it is undeniable that he might also be sued in tort for the act of misconduct that lies back of his promise, and is the only reason why the law implies a promise at all. The present suit, however, is distinctly put upon the statute, and not upon the respondent's liability as an agent who has misbehaved, and therefore the statute only need be considered. What is its true effect? What kind of a right does it give to the libelant? Nobody supposes that an insurance agent who countersigns and delivers a valid policy on behalf of the underwriter is personally liable thereon. If the underwriter becomes insolvent before the loss, the agent cannot be sued on the theory that he had taken a principal part in the contract, and is therefore bound to respond. He is not a party to the contract at all in the same sense that the underwriter is a party, but is a mere intermediary who has performed certain preliminary offices for one party or for both, and has finally delivered or transmitted the written paper and received the premium on behalf of his principal. He cannot be made a real party by any statute or decision whatever, because neither courts nor legislatures can transform one fact into another fact; but under certain contingencies he may undoubtedly be treated as if he were a party, and the same unpleasant consequences may follow such treatment as would have pursued the real principal. But if he should be thus dealt with he suffers not at all because he is a party, but because he has done a wrong to the insured in connection with the contract, which deserves to be punished, and be-

cause it is a ready and convenient way to measure his punishment by requiring him to assume as much liability as he wrongfully declared that his principal had assumed. His real position, however, is that of a tort feasor, and the right of action against him rests ultimately upon the tort that he has committed, and not upon a contract that he did not make. But language is not always used with precision, and there are many expressions, both in statutes and decisions, that lend support to the argument that he is liable on the contract as a veritable party, although it is evidently a logical and intellectual impossibility that he can be liable on a promise to which he did not freely agree.

When, therefore, the Pennsylvania statute of 1876 declares in its forty-eighth section that if the agent of a foreign insurance company that does not comply with the laws of the state shall make a contract of insurance on behalf of such company, either directly or indirectly, he shall be "personally liable on [such] contract," the Legislature used language that was inexact, although its real meaning is perfectly clear. By the preceding section it had punished the same conduct by a fine of $500 as a criminal misdemeanor, and it was now adding a civil penalty for the benefit of the injured party; but the wrongdoing was the same in both cases, and the ground of the action under section 48 in behalf of the individual was precisely the same as the ground of the prosecution under section 47 in behalf of the state. If I am right, therefore, section 48 makes the agent civilly liable for disobeying the statute law of Pennsylvania, and declares that the measure of damages in the action shall be the same measure that would exist if he were really a principal. But I repeat it is in the nature of things impossible —it is, indeed, a contradiction in terms—that he should be a principal party to a contract to which he did not give his voluntary assent. It follows, I think, that the right given to the libelant is a right to recover damages for a wrong done by the violation of the Pennsylvania statute concerning certain contracts of insurance, and this is not a right founded upon a maritime contract such as may properly be enforced in a court of admiralty.

In my opinion, the decisions relating to half-pilotage are not analogous. To employ a pilot is of course to make a maritime contract, and the right to half-pilotage, which is given by various state statutes to a pilot whose services have been offered and refused, is put distinctly upon the ground that the services should have been accepted, and that a contract to pay the sum that has been fixed by the statute as a compensation to the pilot in case of refusal will be implied. Nothing can profitably be added to what was said by Mr. Justice Field in speaking for the Supreme Court of the United States in Steamship Co. v. Joliffe, 2 Wall. 456, 457, 17 L. Ed. 805, on this subject:

"The claim of half-pilotage fees, it is true, was given by the statute, but only in consideration of services tendered. The object of the regulations established by the statute was to create a body of hardy and skilled seamen, thoroughly acquainted with the harbor, to pilot vessels seeking to enter or depart from the port, and thus give security to life and property exposed to the dangers of a difficult navigation. This object would be in a great degree defeated if the selection of a pilot were left to the option of the master of the vessel, or the exertions of a pilot to reach the vessel in order to tender his services were without any remuneration. The experience of all commercial states has

shown the necessity, in order to create and maintain an efficient class of pilots, of providing compensation, not only when the services tendered are accepted by the master of the vessel, but also when they are declined. If the services are accepted, a contract is created between the master or owner of the vessel and the pilot, the terms of which, it is true, are fixed by the statute; but the transaction is not less a contract on that account. If the services tendered are declined, the half fees allowed are by way of compensation for the exertions and labor made by the pilot, and the expenses and risks incurred by him in placing himself in a position to render the services, which, in the majority of cases, would be required. The transaction, in this latter case, between the pilot and the master or owners, cannot be strictly termed a contract, but it is a transaction to which the law attaches similar consequences; it is a quasi contract. The absence of assent on the part of the master or owner of the vessel does not change the case. In that large class of transactions designated in the law as 'implied contracts,' the assent or convention which is an essential ingredient of an actual contract is often wanting. Thus, if a party obtain the money of another by mistake, it is his duty to refund it, not from any agreement on his part, but from the general obligation to do justice which rests upon all persons. In such case the party makes no promise on the subject, but the law, 'consulting the interests of morality,' implies one; and the liability thus arising is said to be a liability upon an implied contract. The claim for half-pilotage fees stands upon substantially similar grounds.

" 'There are many cases,' says Mr. Justice Curtis, speaking for this court, 'in which an offer to perform, accompanied by present ability to perform, is deemed by law equivalent to performance. The laws of commercial states and countries have made an offer of pilotage services one of those cases.' "

So, also, compensation for salvage services rendered to a derelict, where there is no one on board to make an express contract, properly rests upon an implied contract to pay a fair price for a valuable service; but I am unable to see the analogy between such an implied contract, where service is rendered on the one hand and payment is a duty on the other, and the wrong denounced by the Pennsylvania statute, which is punished criminally by one section of the act of 1876, and civilly by another.

Further, I think it is clear that the respondent did make a contract of some kind with the libelant, although the contract is not to be found in the policy of insurance, because it was preliminary to the policy. It was an agreement to insure; that is, an agreement to place the insurance, or to secure valid insurance, or insurance in solvent companies. Certainly, the respondent did not himself underwrite this risk. What he did was to see that others underwrote it, and to have this done was his only contract with the respondent. Such an agreement has been repeatedly decided not to be maritime. As was said by Mr. Justice Story in Andrews v. Essex Ins. Co. (3 Mason, 6, Fed. Cas. No. 374), on page 889, 1 Fed. Cas.:

"Courts of admiralty, in my view, have jurisdiction over maritime contracts when executed, but not over contracts leading to the execution of maritime contracts. * * * It has been said that the memorandum in the present case is an executed maritime contract, equivalent to a policy; but I understand it to be nothing more than an agreement for a policy; and, if no policy had been executed, this court, as a court of admiralty, would not have had jurisdiction to enforce it."

In Marquardt v. French (D. C.) 53 Fed. 603, Judge Brown of the southern district of New York thus speaks upon the subject:

"The contract of insurance, indeed, is a maritime contract, and as such is within the jurisdiction of an admiralty court. But a contract or obligation to

procure insurance, such as I find this obligation to, have been, is not a contract of insurance, nor is it a maritime contract. It is upon the other side of the line dividing contracts which are maritime from those which are not maritime. Such a claim does not differ in principle, so far as the jurisdiction of a court of admiralty is concerned, from a suit to recover compensation for a broker's services in obtaining a charter party, or for building a ship, or for soliciting freight. See The Thames (D. C.) 10 Fed. 848; The Crystal Stream (D. C.) 25 Fed. 575; The Paola R. (C. C.) 32 Fed. 174; Doolittle v. Knobeloch (D. C.) 39 Fed. 40; Diefenthal v. Hamburg (D. C.) 46 Fed. 397. For the libelants it is, indeed, claimed that a failure to effect insurance as agreed would render the agent undertaking to obtain it liable himself as insurer. The cases cited of Morris v. Summerl, 2 Wash. C. C. 203, Fed. Cas. No. 9,837, and of Manny v. Dunlap, Woolw. 372, Fed. Cas. No. 9,047, are not applicable on the point of jurisdiction. What is intended by those decisions is that the agent is liable to make good the loss as if he had been an insurer; that is, the extent of his liability is the same. But as the agent's express contract or obligation in this case, viz., to procure insurance, was not itself a maritime contract, manifestly the mere breach of that contract is not maritime, and hence not within the jurisdiction of this court."

In The Harvey and Henry, 86 Fed. 656, 30 C. C. A. 330, the language of the circuit court of appeals for the second circuit is as follows:

"Controversies arising upon charter parties are cognizable in admiralty because they are maritime contracts; but there are many contracts relating more or less to navigation and commerce which are not cognizable in admiralty. The distinction between preliminary services leading to a maritime contract and such contracts themselves has been affirmed in this country from the first.' The Thames (D. C.) 10 Fed. 848. An insurance broker's contract to procure insurance upon a vessel for a contemplated voyage is not maritime. Marquardt v. French (D. C.) 53 Fed. 606. Neither is a freight agent's contract to solicit freight, nor a broker's contract to procure a charterer for a ship. The Crystal Stream (D. C.) 25 Fed. 575; Torices v. The Winged Racer, Fed. Cas. No. 14,102; Ben. Adm. § 212. 'Undertakings which are merely personal in their character, or which are preliminary or leading to maritime contracts, do not seem ever to have been recognized as within the admiralty jurisdiction.' Cox v. Murray, Abb. Adm. 342, Fed. Cas. No. 3,304. In Plummer v. Webb, 4 Mason, 388, Fed. Cas. No. 11,233, Judge Story says: 'In cases of a mixed nature it is not a sufficient foundation for admiralty jurisdiction that there are involved some ingredients of a maritime nature. The substance of the whole contract must be maritime.' See, also, Diefenthal v. Steamship Co. (D. C.) 46 Fed. 397, and cases there cited."

The respondent's objection to the jurisdiction must be sustained, and it is therefore decreed that the libel be dismissed at the costs of the libelant.

## Motion for Decree with Costs.

### (February 9, 1904.)

The libel in this case was recently dismissed on the ground that a court of admiralty has no jurisdiction of an action in personam brought to enforce against the agent of a foreign insurance company, which was not qualified to do business in Pennsylvania, the statutory liability imposed upon him by section 48 of the Pennsylvania act of 1876 (P. L. 66). I directed a decree to be entered dismissing the libel, with costs, but this was a mere inadvertence. It is well known, although for the moment it escaped my attention, that no costs can be allowed when a libel is dismissed for want of jurisdiction of the subject-matter: Citizens' Bank v. Cannon, 164 U. S. 319, 17 Sup. Ct. 89, 41 L. Ed. 451. In

The Francesco (D. C.) 118 Fed. 112, the libel was dismissed simply because the court had no power to entertain the particular form of action, and I allowed costs in that case, because the court had jurisdiction both of the subject-matter and of the parties.

A decree will be entered dismissing the libel, but without any order concerning costs.