## UNITED STATES v. UNION PETROLEUM S. S. CO.

(District Court, S. D. New York. August, 1926.)

**1. Shipping ⬩58(2).**

Evidence *held* to show that provisions of existing charter were not taken over by United States under requisition charter, and government was not liable for brokerage commissions for obtaining such charter.

**2. Shipping ⬩55.**

Under requisition charter to United States, in which owner agreed to accept charter hire "as the just compensation required by law," United States was not liable for brokerage commissions for procuring outstanding charter.

**3. Shipping ⬩55.**

Voluntary payment of brokerage commissions for obtaining charter was not "recovery" by third parties on vessel's commitments, for which United States was liable under terms of requisition charter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Recover —Recovery.]

**4. Shipping ⬩55.—Right of United States to defend claim for brokerage commission for procuring charter of ship requisitioned by it held substantial one, which it was shipowner's duty, as government's agent, to preserve.**

Right of United States to defend any claim for brokerage commission for procuring charter for ship subsequently requisitioned by United States was substantial one, which it was ship owner's duty, as agent of government to preserve, and government was not foreclosed from raising owner's unauthorized payment of such commissions.

At Law. Action by the United States against the Union Petroleum Steamship Company. Judgment for plaintiff.

Emory R. Buckner, U. S. Atty., of New York City (Walter Schaffner, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Kirlin, Woolsey, Campbell, Hickox &

Keating, of New York City (John Woolsey and D. N. Tibbetts, both of New York City, of counsel), for defendant.

KNOX, District Judge. On October 13, 1917, the steamer Westwego was taken over from defendant by the United States. Subsequently a requisition charter was entered into between the plaintiff and the defendant. One of its provisions was as follows:

"Second. In consideration of the compensation provided and the other obligations assumed by the United States hereunder, the owner accepts this requisition charter in full satisfaction of any and all claims he has or may have against the United States arising out of the requisition and accepts the compensation herein provided for as the just compensation required by law: Provided, however, that the acceptance of this requisition charter shall be without prejudice to the claim, if any, the owner may have against the United States arising out of recoveries against the owner by third parties on the vessel's commitments."

At the time of requisition, the vessel was under charter to the French government. That instrument bore date of April 7, 1917, and it provided that the charter should continue for the duration of the European war, and up to three months after the signing of a peace treaty between France and her allies and Germany and her allies. The ship was to make as many voyages as possible, but in no event less than six. At the time of requisition four voyages had been made.

Defendant's charter with the French government also provided for the sale to charterers of large quantities of benzine. The contract had been negotiated by a man named Fisher Jones, and for his services in connection therewith the defendant had obligated itself to pay the following commissions: Two per cent. f. o. b. value on any cargo sold by Anglo-American Oil Company, Limited, and paid for when payment is made in America. (This item is not in dispute, and no question in reference to it is presented.) Five shillings per ton on the actual cargo capacity of ship when goods were taken from an Atlantic port, and seven shillings when they were taken from the Gulf of Mexico. These rates of commission were to apply on each cargo carried by the ship.

Throughout the period of plaintiff's requisition of the Westwego, she carried cargoes of benzine purchased from the defendant by the French government. Meanwhile she was operated by defendant as the agent for the plaintiff, the terms of the requisition charter being applicable to the relationship. At the inception of the requisition, the plaintiff was informed of the outstanding agreement with the French government. There was, however, no formal requisition of the same, nor was there any formal adoption of such portion of the agreement as the United States was capable of performing. But by reason of the course of dealing between the parties to this suit, and as a result of communications passing between them, the defendant claims that the United States, in effect, requisitioned the freight that the Westwego might earn under the charter aspects of the contract with the French government. Hence it claims that the government became obligated to pay such commissions as accrued to Fisher Jones, on voyages made by the Westwego, when carrying benzine to France, within the period of the requisition charter.

The United States, on the contrary, takes the position that no part or portion of defendant's charter with the French government was requisitioned, and that it is, in no aspect of the case, responsible for the payment of broker's commissions. It further contends that, inasmuch as defendant, as agent under the requisition charter, was permitted to retain funds of the government equal in amount to the sum claimed by Jones for commissions, pending a settlement of disputes, and that it has, contrary to instructions, paid the money to Jones, there is no valid defense to the complaint.

[1] Obviously that portion of the contract relating to the sale of petroleum products to the French government was not taken over by the United States, and I also believe that the charter provisions of the agreement were not requisitioned or adopted. While there is considerable evidence in the record which tends to support a contrary view, I think the real intention was merely to continue the vessel in the French benzine service, and that its continuation in such service was the result of a wish to convenience and facilitate the desires and probable needs of the French government. At all events, each voyage made by the Westwego, subsequent to requisition, was upon separate arrangement and authorization of the representatives of the United States. The freight rate and insurance coverage were not, at all times, the same as those provided in defendant's contract with the French government; and on at least two of the voyages the vessel moved on independent charter parties made between the United States Shipping Board and the French Republic. Not only this, but the defendant, after several trips had been made subsequent to

the requisition, wrote the shipping control committee that it was his "wish" that the steamer again return to France, and requested appropriate authority in the premises. Had the contract been requisitioned or adopted, as defendant now argues, it does not seem likely that the constant correspondence between the parties, relative to authority for the several voyages, and for a specification of the terms on which they should be carried out, would have taken place.

[2] But, even if a requisition of the charter aspects of the contract made between defendant and the French government actually occurred, I do not believe that plaintiff is liable to Fisher Jones for commissions. One reason is that, in entering into the requisition charter with the United States, defendant received the value of its contract covering the hire of the Westwego to the French government, and that value must have included defendant's cost in procuring the contract; that is, the brokerage commissions, accrued and to accrue, must have been within the contemplation of the parties when defendant agreed to accept the requisition charter hire "as the just compensation required by law." This thought is borne out by the fact that, when the Westwego was requisitioned, there was no assurance that the vessel would not be put into an entirely different service, thus entirely frustrating defendant's contract with the French government. It is therefore reasonable to suppose that defendant, in accepting the requisition charter hire, was satisfied with its sufficiency to cover all costs and profits that would have accrued, had the charter been fully executed. There is this further consideration: The defendant may be said to have been the beneficiary of the willingness of the United States to retain the vessel in the benzine service. By this I mean that the defendant was enabled to carry out a presumably profitable sales contract, which, but for what was done, would have been prevented.

[3] True, defendant's acceptance of the requisition charter hire was without prejudice to the claim, if any it might have against the United States, arising out of recoveries on the vessel's commitments by third parties. No such party has made recovery against the defendant, and the voluntary payment of plaintiff's money, in satisfaction of the claim asserted by Jones against the defendant, cannot constitute a recovery; nor could a claim for brokerage, even though it had been put in judgment, be considered as a recovery arising out of the commitment of the Westwego.

15 F.(2d)—25

The word "recovery," as generally used in contracts such as the requisition charter, means one that is had by process and course of law. See 34 Cyc. 764. In a special case, it may mean that which is collected or obtained without a suit. People v. Reis, 76 Cal. 269, 18 P. 309. But there is nothing here to give the word a meaning other than that which it ordinarily carries; and, as for brokerage not being a commitment of the ship, reference may be had to what was held by Judge Learned Hand in Reid v. United States Shipping Board, decided October 18, 1922. The court there said:

"It is, of course, well settled that a broker who gets a charter for an owner has no maritime lien on the ship. The Thames [D. C.] 10 F. 848; The Harvey and Henry, 86 F. 656 [30 C. C. A. 330]. Indeed the claim is not even of maritime cognizance. Richard v. Hogarth [D. C.] 94 F. 684."

Furthermore, I fail to see wherein the present case differs in principle from that which was before the Supreme Court in Berg v. United States, 269 U. S. 535, 46 S. Ct. 100, 70 L. Ed. ——, and which was ruled by Omnia Commercial Co., Inc., v. United States, 261 U. S. 502, 43 S. Ct. 437, 67 L. Ed. 773.

[4] In addition to what has gone before, I may say that, from a technical standpoint, the defendant's payment of the commissions claimed by Fisher Jones, after the plaintiff had given instructions that the same should not be paid, would probably entitle the plaintiff to the judgment that is sought. By that payment the defendant put it out of the power of the United States to defend any claim that Jones might have made against the government. That right to defend was a substantial one, which it was the duty of defendant, as agent of the plaintiff, to preserve. That the payment had been made to Jones was not known by the United States at the time an arrangement was reached as to the method of determining the points at issue as between plaintiff and the defendant on the question of brokerage. Consequently the government is not foreclosed from raising the unauthorized payment to Jones as a reason which entitles it to a recovery. I have preferred, however, to rest the judgment, which will be directed in favor of the plaintiff, upon the merits of the controversy.

At such time as is convenient, the attorneys for the respective parties may appear before me, and I will direct a verdict in favor of the plaintiff for the amount demanded in the complaint, with interest.