**D. C. ANDREWS & COMPANY,**
Incorporated,

v.

**The UNITED STATES.**
No. 96–54.

United States Court of Claims.
Oct. 5, 1954.

Francis B. Goertner, Washington, D. C., for plaintiff.

Hubert H. Margolies, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Leavenworth Colby, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff sues for $13,764.82 claimed to be due it as brokerage commissions. The United States had chartered certain of its vessels to the India Supply Mission. Incorporated in the charter party was the following provision:

"Commission—Commission or brokerage is due and payable by the

Owner in accordance with and to the extent of applicable regulations of the War Shipping Administration to * * *."

Plaintiff's suit is based upon the alleged breach by the United States of the obligation to pay such brokerage commissions to plaintiff who acted as cargo broker for the Indian Supply Mission.

Defendant contends that the suit is for the breach of a charter obligation and is therefore cognizable only in the District Courts under the Suits in Admiralty Act.[1]

Section 2 of the Suits in Admiralty Act provides:

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States * * *."

■ As stated by defendant, all maritime causes of action against the United States where it owns vessels or where the vessel is operated by or for the United States, fall under the Suits in Admiralty Act. The issue for decision is, therefore, a narrow one, i. e., is the claim stated in the petition a *maritime* cause of action so that if the vessel were privately owned a proceeding in admiralty could have been maintained on it?

■ Defendant first contends that because the obligation is expressed in the charter party itself, the claim on it must be maritime in nature and cognizable only in the District Court under the Admiralty Act, citing as authority Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336. In the Matson case, the plaintiff sued on a provision in a so-called requisition charter between itself and the United States, which charter provided that the United States would reimburse plaintiff for any increases in seamen's wages. The Government contended that the cause of action was maritime and fell within the exclusive jurisdiction of the District Court. Plaintiff insisted that the so-called requisition charter was in reality a mere agreement for the payment of just compensation for requisitioned ships. The Supreme Court held that the document in question was a contract for the operation of a vessel for the United States and that a suit on that contract was a maritime cause of action. The subject matter of the suit was the wages of seamen who operated the vessel and as such, between private parties, has always been cognizable on the admiralty side of the District Courts.[2] In Field v. United States, 113 F.Supp. 190, 125 Ct.Cl. 559, certiorari denied 346 U.S. 922, 74 S.Ct. 308, it was held that contracts of marine hull insurance are maritime and outside the jurisdiction of the Court of Claims. In this connection, however, it should be remembered that contracts to *procure* insurance for a vessel are non-maritime and not cognizable in a court of admiralty. Reliance Lumber Co. v. Rothschild, D.C., 127 F. 745.

■ While it is true, as defendant says, that plaintiff's rights arise out of a provision in the charter party, this alone does not render the claim a maritime cause of action.

■ Plaintiff contends that brokerage or agency contracts have always been held to be non-maritime, and that suits for breach of such contracts are not cognizable in courts of admiralty. Plaintiff relies primarily on two cases: The Thames, D.C., 10 F. 848 and Taylor v. Weir, D.C., 110 F. 1005. In The Thames, the admiralty court dismissed a libel by a *charter* broker on the ground that his services were preliminary leading up to a maritime contract and were not themselves maritime in nature. Taylor v. Weir also involved a libel *in personam* to recover commissions for services as a

1. Act of March 9, 1920, 41 Stat. 525, 46 U.S.C.A. § 741 et seq.

2. Am.Jur., Admiralty, § 38, p. 568.

broker in negotiating a charter for a ship. In this case, however, the charter party itself contained the provision that the charter's agent or broker should be paid a commission at a specified rate of freight. The admiralty court dismissed the libel on the ground that the contract to obtain a charter was not a maritime contract, quoting with approval the following language from Zeigler **v.** The Paola R., C.C., 32 F. 174:

> " 'Maritime liens are stricti juris, and do not arise on all contracts, made by the owners to result in profit to the ship. *The test is to be applied to the subject, and not to the object.* It is the subject-matter of the contract which must be maritime, and not the mere object,—the ship. (Italics supplied.)' "

The court also held that the fact that the agreement for commissions constituted a clause in the charter party did not make that agreement a maritime contract. "The question of jurisdiction does not depend upon the form of the contract, but the substance of the undertaking." 110 F. 1005. See, also, Richard v. Hogarth, D.C., 94 F. 684.

Defendant next says that the cases relied on by plaintiff involve contracts for the services of *charter brokers* whereas plaintiff was acting as a *cargo* broker. It appears, however, that the same rule applies to contracts of cargo brokers. In The Crystal Stream, D.C., 25 F. 575, libelant was a freight agent or cargo broker suing in admiralty for compensation for services rendered to the steamer Crystal Stream. Libelant had been employed by the master and charterer to solicit or procure freight and passengers for the steamer. Plaintiff solicited freight and passengers and upon nonpayment of his commission, he sued the ship owners in admiralty. The court held that the action could not be sustained unless the broker's services were maritime. It was concluded that the broker's services were not directly connected with the navigation of this ship nor did they directly enable her to earn freight; that all the maritime services of the ship and all maritime duties and obligations began *after* the goods had been procured and sent to the ship and *after* the libelant's services had ended. The services of the cargo or freight broker were characterized as wholly preliminary to the maritime contract of the ship for the transportation of the cargo that the broker procured and were held to be not essentially different from those of other agents or clerks who might be employed in a permanent office on shore for the transaction of other necessary parts of the freight business. The libel was dismissed as being outside the jurisdiction of the admiralty court. We have no doubt that if the contract for the services of the cargo broker had been embodied in the charter party, the result would have been the same. Other cases holding the contract employing a person as passenger or cargo broker to be nonmaritime, are, The Humboldt, D.C., 86 F. 351; The Harvey and Henry, 2 Cir., 86 F. 656.

But defendant says that assuming the cargo broker contract to be non-maritime, then its severance from an essentially maritime contract like a charter is contrary to the teaching of American Stevedores, Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011. We do not think the American Stevedores case is analogous. In that case the controversy arose out of the indemnity provision in a stevedoring contract. The court held that a provision in a maritime contract, such as a stevedoring contract, for indemnity for damages *arising out of the performance of wholly maritime activities,* should not be severed. In the instant case, the brokerage activities of plaintiff covered by the charter party were wholly non-maritime and this suit involves the performance of such nonmaritime activities. The court in the American Stevedores decision recognizes this distinction and refers to Pillsbury Flour Mills Co. v. Interlake Steamship Co., 2 Cir., 40 F.2d 439, and The Richard Winslow, 7 Cir., 71 F. 426. In the Pillsbury case the contract provided for (1) the carriage of wheat, (2) its winter

storage, and (3) its delivery in good condition. A libel was brought in admiralty for breach of the obligations to store and deliver in good order. The court held that there were in actual fact two contracts, one for transportation and one for storage and that the breach of the storage contract "which is non-maritime," could not be the subject of a suit in admiralty. In The Richard Winslow, supra, the Circuit Court of Appeals, affirming 67 F. 259, held that a contract for the shipment of grain to Buffalo and for storage of the grain in the vessel at Buffalo until the following spring, was not a maritime contract insofar as it provided for storage, and that the admiralty court had no jurisdiction of the suit for damage to the grain during the storage. The court held that the character in which the cargo was held by the vessel changed from that of carrier to that of warehouseman.

▬▬ Contrary to the Government's contention herein, non-maritime portions of otherwise maritime contracts may be severed and in fact must be, since the admiralty court will not take jurisdiction of causes of action arising out of them. Furthermore if the suit is on the whole contract, part of which is non-maritime and part maritime, the admiralty court will dismiss the libel. In Plummer v. Webb, 19 Fed.Cas. pages 891, 894, No. 11,233, 4 Mason 380, Judge Story noted that the contract in suit contained obligations of both maritime and non-maritime nature. He said:

"In cases of a mixed nature it is not a sufficient foundation for admiralty jurisdiction, that there are involved some ingredients of a maritime nature. The substance of the whole contract must be maritime. * * * In such a mixed contract the whole would most appropriately belong to a court of common law. * * * "

In The New Hampshire, D.C., 21 F. 924, libel was brought on a contract whereunder the owner and master of the ship agreed to take the libelant's goods on board, carry them to Detroit, sell them and pay the proceeds to the owner of the goods less an agreed amount representing freight. The libel was for breach of the agreement to sell the goods and account to the owner. The admiralty court held that this part of the contract was non-maritime and that the master of the vessel in carrying out the obligation to sell the cargo and account for the proceeds, was acting as agent of the owner of the cargo. The court noted that if the contract had merely required the master to deliver the goods to a consignee named in the contract and to collect from such consignee the freight charges and advances together with the price, and, after deducting the freight, to pay over to the libelant the balance, such a contract would have been all maritime for which the vessel would have been liable upon breach. In the latter situation, the court said that the collection of the money was a mere incident of the carrying and delivery of the cargo. To the same effect, see The Alice, D.C., 172 F. 527. In Peck v. Laughlin, 19 Fed.Cas. page 77, No. 10,890, a libel for breach of a clause in a charter party was dismissed as being beyond the jurisdiction of the admiralty court where the obligation sued on was an agreement by the master to purchase a cargo of salt. The court pointed out that the contract to purchase the salt was not an incident of the contract to carry the salt and that its performance was preliminary to the latter's taking effect.

In The Ripon City, 5 Cir., 102 F. 176, the charter party contained a provision that in case the steamer was in general average, the charterers or their agents should have the settlement of the general average. When the ship caught fire, the master employed a firm other than the charterer's agent to look after the ship and cargo, whereupon the charterer's agent brought suit in admiralty on an alleged breach of the charter party agreement to employ his services in and about the affairs of the ship in case of general average. The circuit court, reversing the district court, held that the provision in the charter party sued on

was non-maritime in nature and was rather a purely personal stipulation which was not cognizable in a court of admiralty. See also Cox v. Murray, 6 Fed.Cas. page 681, No. 3,304.

In The Thomas P. Beal, D.C., 295 F. 877, the court held that where a contract contains maritime and non-maritime covenants, the maritime portion of the contract may be litigated in admiralty court or at common law, but the non-maritime portion of the contract may be heard *only* at common law. If such a contract is not separable, the whole case must be heard at common law. Gowanus Storage Co., Inc., v. United States Shipping Board Emergency Fleet Corporation, D.C., 271 F. 528.

Defendant contends that if the Government's obligation had been to reimburse the charterer, Indian Supply Mission, for the expense of hiring cargo brokers, that obligation could have been enforced by the charterer under the Suits in Admiralty Act on authority of United States v. Standard Oil Co., 9 Cir., 156 F.2d 312, in which the court enforced the charterer's claim for the payment of its attorneys fees. In the Standard Oil case, the suit was in admiralty for damages for breach of a clearly maritime contract to carry and deliver oil in good condition. This agreement was broken when the oil was delivered in bad condition. The court held that this agreement to deliver in good condition was an essential part of the maritime contract which would probably not have been entered into at all without it. The agreement to pay charterer's legal fees in the event of breach of such a maritime contract, was merely incidental to the main maritime contract. In the instant case the hiring of cargo brokers was not an essential part of the maritime contract and involved matters of a wholly non-maritime nature. The agreement on the part of the United States to pay the cargo broker's commission was not a necessary part of the agreement for the operation of the vessel and was clearly non-maritime and outside the jurisdiction of the admiralty court. As point-

ed out above, even obligations between the owner and the charterer are not enforceable in admiralty unless they are maritime in nature.

We conclude that the agreement contained in the charter party obligating the Government to pay the commissions to the charterer's cargo broker was non-maritime in nature and one which, if the vessel were privately owned, would not be cognizable by a court of admiralty. Accordingly, the cause of action is within the jurisdiction of the Court of Claims and defendant's motion to dismiss the petition for lack of jurisdiction is denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.