**SWIFT & COMPANY**

v.

**The UNITED STATES.**

**No. 232–53.**

United States Court of Claims.

Oct. 2, 1956.

L. Reyner Samet, New York City, for the plaintiff. Joseph C. Kennedy, Chicago, Ill., Clarence E. Dawson, Washington, D. C., Weston Vernon, Jr., and Arthur H. Goldberg, New York City, were on the briefs.

George Willi, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice for the defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff sues to recover $7,246.67, with interest, which was paid as transportation of property tax during the period commencing October 1, 1948, and ending December 31, 1949. This is a test case. The sole issue is whether the phrase "the amount paid * * * for the transportation * * * of property" as used in section 3475 of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 3475 (1946 Ed.), includes charges by the carrier for the supplying of ice and salt in the bunkers of refrigerator cars and the accessorial services of switching and demurrage.

During the period involved in this suit plaintiff shipped its products to various points within the United States over the

lines of certain carriers by rail. The carrier's freight bills for this transportation consisted of the following components, each stated separately thereon: (1) the line haul charge, i. e., the charge for rail movement of the commodity involved over the distance that it was transported; (2) charges for demurrage and, in the case of perishable commodities, charges for ice supplied by the transporting carrier together with charges for switching incidental to placement of the ice in the cars containing plaintiff's commodities; and (3) a transportation tax equal to three percent of the aggregate charges. The three percent tax was applied only to charges for services rendered plaintiff by the carriers transporting its property. To the extent that plaintiff supplied ice to refrigerate its property while aboard the carrier's cars there was no icing charge made by the carriers and no transportation tax collected thereon.

During the period involved the carriers transporting plaintiff's property collected from it a total of $7,246.67 in transportation tax attributable to freight charges, aggregating $241,555.75, that were for demurrage, icing salt, and incidental switching. The carriers duly paid this tax over to the collector and plaintiff timely filed a claim for its refund. The claim was rejected and this suit was timely instituted.

The pertinent part of section 3475 provides:

"There shall be imposed upon the amount paid within the United States after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company,

or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under this section. * * *"

The pertinent part of Treasury Regulation 113, 26 C.F.R. 143.1(d) (1949 Ed.), provides:

"The term 'transportation' as used in this part means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate, and intra-city or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering livestock, and similar services and facilities."

The plaintiff challenges this part of the regulation as being invalid because it is an attempt by the Commissioner of Internal Revenue to broaden the meaning of the term transportation as used in section 3475 by assimilating it to the definition of transportation as defined by Congress in the Interstate Commerce Act, 24 Stat. 379, as amended by the Hepburn Act, 34 Stat. 584, 49 U.S.C. § 1, 49 U.S.C.A. § 1. The plaintiff contends that the ordinary and commonly understood meaning of the term transportation does not include icing or salting or switching and demurrage, and that it would be necessary for Congress to enlarge the ordinary meaning in order to include such items. The plaintiff asserts that the ordinary meaning of the term transportation was enlarged for purposes of interstate commerce by the Hepburn Act. However, we really do not know whether the ordinary meaning was enlarged by the Hepburn Act since the term transportation was defined before and after the amendment by rather

specific language. The definition of transportation contained in the Interstate Commerce Act before amendment provided that "the term 'transportation' shall include all instrumentalities of shipment or carriage." In 1906 it was enlarged by the Hepburn Act to include, *inter alia*, and in addition to the original definition, "all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported." The Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Dettlebach, 239 U.S. 588, 36 S.Ct. 177, 60 L.Ed. 453, and Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036, cases merely state that the statutory definition was enlarged, not that either of the definitions represent the ordinary meaning of the term.

There is some dispute as to whether the definition of the term transportation contained in the above regulation was borrowed by the Commissioner from the definition contained in the Hepburn Act. Whether or not the definition was borrowed is immaterial. Certainly the statutory definition of transportation contained in an act designed for the purpose of regulating interstate commerce does not control the meaning of that term in a different act designed for the purpose of imposing a tax on shippers.

It is a cardinal rule that the ordinary and commonly understood meaning shall be attributed to the terms employed in a statute unless the terms are ones of art or defined by the statute. The term transportation is not defined by the taxing statute, and as far as we know is not a term of art. Thus our problem is to determine whether its ordinary and commonly understood meaning is the all inclusive one attributed to it by the defendant, the very narrow one given to it by the plaintiff, or perhaps one somewhere between the two.

The plaintiff refers to Edelman v. Boeing Air Transport, Inc., 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155; Independent Warehouses, Inc., v. Scheele, 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346; and New York, Ohio & Western Railway Co. (Gebhardt v. City of New York), 2 Cir., 161 F.2d 518, 522, as indicating that some of these accessorial services or products are subject to a state tax, the validity of which has been sustained as not being a burden on transportation in interstate commerce. The court stated in the New York, Ohio & Western Railway Co. case that "The demurrage represents a service apart from transportation * * *."

The plaintiff also argues that since some of these products or services are subject to local taxes, a Federal tax on them also would result in double taxation which should be avoided unless required by express terms of the statute. It relies on United States v. Supplee-Biddle Hardware Company, 265 U.S. 189, 44 S.Ct. 546, 68 L.Ed. 970. Although that case is distinguishable on the ground that in that case both a Federal estate and Federal income tax were sought on the same amounts, there is some significance to the fact that many of the states do impose a tax on these same items.

It is also significant that section 3475 by its terms only taxes the amount paid the carrier. Therefore, if the shipper or any one other than the carrier performed these services, or furnished these products, a tax thereon would not be imposed. We can see no logical reason why Congress would have intended to impose a transportation tax on the shipper when the carrier ices, loads or unloads, etc., the car and not impose a tax on the shipper when the shipper or someone else performs the identical services. Such a tax would be discriminatory against the carriers for no ostensible reason.

We do not believe that Congress intended to give the term transportation the same scope or breadth in section 3475 as it did in the acts regulating interstate commerce. The definition of transportation contained in the above regulation is too broad. The contention

of defendant that this regulation should be deemed to have received legislative approval is without merit. A treasury regulation interpreting a transportation tax act in 1918 to 1921 when the act was repealed could hardly be considered to have been approved by Congress in 1942 when another transportation tax act is passed. The fact that Congress re-enacted this section in the 1954 Code without any substantive change does not give approval to the regulation because there is no showing that this problem was called to the attention of Congress.

The case of Procter & Gamble Co. v. United States, D.C., 281 F. 1014, relied on by defendant in support of its construction, was dismissed on the ground that the taxpayer paid the tax voluntarily and without protest. The dictum in the two-paragraph opinion did state that the transportation tax was payable on demurrage, citing only interstate commerce regulatory cases. We believe the dictum was wrong.

We believe that Congress intended to impose a tax on the amount paid for actual transportation and not on all of the additional services that may be furnished by the carrier. We believe that payment for any movement of cargo from one point on the line to another, including, but not limited to, such things as lighterage, switching, backhauling, are amounts paid for transportation. Amounts paid for ventilation, refrigeration, icing and salting, are payments for those services and not payment for transportation within the meaning of section 3475. The above-mentioned services are not intended to be all inclusive, but only illustrative of the distinction between amounts paid for actual transportation and amounts paid for additional services. While the writer of this opinion believes the above should include demurrage, the majority of the court believes otherwise. Thus demurrage is not included in the services which are not taxable.

The application of the above construction to the instant case results in a proper tax on switching, but an improper tax on icing and salting.

The plaintiff is entitled to recover the tax paid on the amount paid for icing and salting, with interest as provided by law, and judgment will be entered accordingly.

The amount of recovery is reserved for further proceedings in accordance with rule 38(c) of this court, 28 U.S.C.A.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.