**SKIBSAKTIESELSKAPET SILJESTAD et al.**

v.

**UNITED STATES.**

**SKIBSAKTIESELSKAPET MANDE-VILLE**

v.

**UNITED STATES.**

**DAMPSKIBSINTERESSENTSKABET GARONNE**

v.

**UNITED STATES.**

Nos. 507-57, 508-57, 509-57.

United States Court of Claims.

March 2, 1960.

Seymour H. Kligler, New York City, for plaintiffs. Herman Goldman and Sol D. Bromberg, New York City, were on the brief.

Clare E. Walker, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The Government has moved for judgment on the pleadings dismissing the petitions herein upon the ground that all of the claims herein are based upon maritime contracts and, under the Suits in Admiralty Act of March 9, 1920, 41 Stat. 525, 46 U.S.C.A. § 741 et seq., could be enforced only in a United States District Court sitting in admiralty.

The plaintiffs are all common carriers by water for hire in foreign commerce. They all carried goods for the Government under ocean bills of lading from foreign ports to the Port of New York. They discharged the goods upon the appropriate piers in New York. The Government failed to remove the goods from the piers within the "free time" permitted by lawfully effective tariffs on file with the proper public authorities. Those tariffs set rates of demurrage to be paid by owners of goods who did not remove their goods within the free time. The charges here sued for are proper, according to those tariffs.

If a claim may be sued upon in a Court of Admiralty, this court does not have jurisdiction to entertain it, even though it is a claim otherwise included within the language of the statutes defining this court's jurisdiction. Johnson v. United States Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451; Lykes Bros. Steamship Co., Inc. v. United States, 124 F.Supp. 622, 129 Ct.Cl. 455. The problem in cases in which the transaction has a relation to shipping by water is not the problem of interpreting the statutes conferring jurisdiction upon this court. It is, instead, the problem of determining whether, according to the history and traditions and judicial precedents relating to Admiralty jurisdiction, a Court of Admiralty would entertain the case. If it would, we cannot.

Suprisingly, there seems to be no precedent on the question of demurrage charged for leaving goods on a ship's pier. It would be hard to think of any situation more closely related to water transportation, but not consisting of the actual carriage of goods in ships, than the instant situation. In a proceeding before the United States Maritime Commission entitled "Free Time and Demurrage Charges at New York," 3 U.S.M.C. 89 at 101, the Commission said:

"It should be noted that free time is granted by the carriers not as a gratuity, but solely as an incident to their obligation to make delivery. The Eddy, 5 Wall. 481, 495 [18 L. Ed. 486]; The Titania [2 Cir.] 131 F. 229, 230. This is an obligation which the carrier is bound to discharge as a part of its transportation service, and consignees must be

afforded fair opportunity to accept delivery of cargo without incurring liability for penalties. Free time must be long enough to facilitate this result—but need not be longer. * * * "

■ The Maritime Commission, then, regarded the storage of goods on the pier during the free time as an incident, an implied term, of a ship's contract to transport and deliver goods. It would seem that the owner's corresponding obligation to remove the goods within a reasonable time and not appropriate the space needed by the ship company for other cargo would be an implied term in the owner's maritime contract. This court has held that a railroad's charge for demurrage is subject to a tax on transportation charges. Swift & Co. v. United States, 144 F.Supp. 956, 136 Ct. Cl. 394, 399–400.

The parties have cited numerous decisions involving situations which they urge, are analogous to the instant situation. We do not find them helpful and do not discuss them. In such measure as a court not experienced in maritime matters is able to detect the subtle difference between what is maritime and what is not, it seems to us that the instant situation is sufficiently maritime in character to be within the jurisdiction of a Court of Admiralty and, therefore, not to be within the jurisdiction of this court.

Defendant's motion for judgment on the pleadings is granted and the petitions are dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

WHITAKER, Judge (dissenting).

I cannot agree with the opinion of the majority. This suit is based on a claim for pier demurrage, which is independent of the maritime contracts under which the carriers delivered the goods to New York.

Under the maritime contracts and the lawfully effective tariffs, the carriers allowed the United States, as consignee, a reasonable period of "free time" after the goods were discharged upon the pier, during which time the United States could take possession and remove the goods without incurring any additional charges. This so-called "free time" was an obligation of the maritime contracts since it is in effect an incident of the carrier's duty to make delivery. There is no doubt that a breach of contract which occurs during the period of "free time" is to be remedied solely by a court of admiralty. North American Smelting Co. v. Moller S. S. Co., D.C., 103 F.Supp. 447.

But once the carrier has allowed the consignee a reasonable time to accept delivery, its obligation under the maritime contract has been discharged and the obligation of the consignee to pay demurrage for further time is not an incident of that contract. The carriers' duty was to provide a time during which the consignee could accept the goods; this duty did not give rise to a promise to store the goods with or without charge until the consignee saw fit to accept delivery.