**ALASKA BARGE AND TRANSPORT, INC.**

v.

**The UNITED STATES.**

**No. 206-65.**

United States Court of Claims.

March 17, 1967.

Ernest H. Land, Washington, D. C., for plaintiff. Alan F. Wohlstetter, Washington, D. C., attorney of record.

Thomas F. McGovern, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

In this case, the court is called upon to resolve a jurisdictional issue involving three sets of related variables: two separate supply contracts, both executed between the plaintiff and the Government; two courts, only one of which may retain jurisdiction over plaintiff's entire claim; and two bodies of law, one relating to the general law of Government contracts, and the other relating to the principles of admiralty.

On February 2, 1961, Alaska Barge and Transport, Inc., a carrier by land and water, was awarded three Army contracts for the transportation of general and bulk cargo from ports on the West Coast of the United States to remote ports and military stations in Alaska, the Pacific and Arctic Oceans, and the Bering Sea. Contained in the invitation for bids were two rate levels, the application of which was dependent upon the size of the cargoes delivered.

Claiming that it had been overcharged on several shipments because of plaintiff's application of an incorrect rate, the Government withheld $127,807.32 from sums admittedly due plaintiff under a similar supply contract entered into in 1963 for the delivery of items to Project MONA LISA military installations in Alaska. On June 16, 1965, the Government filed a libel for declaratory judgment in the United States District Court for the Northern District of California, praying for a judicial declaration that the plaintiff had made erroneous billings under the rate systems governing the 1961 shipments.

Shortly thereafter and before answering in the admiralty action, Alaska Barge filed a petition in this court for recovery of the amount deducted as overcharges on the 1961 shipments. On August 20, 1965, the Government moved for an order transferring and consolidating plaintiff's claim with the libel action in California or, in the alternative, for an order dismissing the petition for lack of jurisdiction. In support of its motion, the United States asserts that the plaintiff's cause of action is based upon a maritime contract of affreightment and is therefore within the exclusive jurisdiction of the district courts under the Suits in Admiralty Act of March 9, 1920, 41 Stat. 525, as amended, 46 U.S.C. §§ 741–752. Alaska Barge has countered with the petition that its claim stems from a contract part maritime and part non-maritime and is therefore not cognizable in admiralty.

Both Alaska Barge and the Government have consistently maintained that the 1963 supply contract is determinative of the jurisdictional question. That position was urged in their original briefs, as well as in supplemental briefs filed in response to a court order of October 28, 1966, which specifically directed the parties to describe the nature of the 1961 shipments. Neither the plaintiff nor the defendant, however, has advanced persuasive authority for their contention.

■ We need only point out that the underlying dispute relates to the parties' conflicting interpretations of the 1961 rate provisions. There is no controversy concerning the 1963 shipments, and it is conceded that the Government's offset was made against amounts admittedly owing to the plaintiff as a result of deliveries in that year. If our jurisdiction is to attach, therefore, it must be founded on the nature of the 1961 contracts.

This has always been the rule in our common carrier cases and its extension

to the present controversy is clearly warranted. Boston & Maine R. R. Co. v. United States, 169 F.Supp. 957, 144 Ct. Cl. 803 (1959); Atlantic Coast Line R. R. Co. v. United States, 112 F.Supp. 594, 125 Ct.Cl. 235 (1953). To resolve any further doubt, we direct the parties' attention to the explicit language of Rule I(2) (F) in Appendix B of our Rules, and the analogy which may be drawn therefrom: [1]

> The word "dispute" * * * means the shipment or shipments with respect to which the General Accounting Office or other agency of the Government determined that the carrier's charges had been overpaid * * * rather than subsequent shipments which are not in dispute except for the fact that the overpayments determined as to the shipments in dispute have been deducted from the amount of the carrier's bills covering such subsequent shipments.

■ In our system of Federal courts, jurisdiction over maritime matters is vested exclusively in the district courts, and the Court of Claims is precluded from entertaining such actions, even though they might otherwise be cognizable under the terms of the Tucker Act, 28 U.S.C. § 1491, 1964 ed.; Brady v. Roosevelt Steamship Co., 317 U.S. 575, 579, 63 S.Ct. 425, 87 L.Ed. 471 (1943); Isthmian Steamship Co. v. United States, 191 F.Supp. 338, 344 (S.D.N.Y.1961), aff'd, 302 F.2d 69 (2d Cir. 1962); Field v. United States, 113 F.Supp. 190, 191, 125 Ct.Cl. 559, 561 (1953), cert. denied, 346 U.S. 922, 74 S.Ct. 308, 98 L.Ed. 416 (1954). Whenever presented with a threshold question as to the propriety of

our adjudicating a claim having maritime elements, it is our responsibility to view the facts as would a court of admiralty. If admiralty jurisdiction is found to exist, then we must transfer the case to its proper forum. Act of September 13, 1960, 74 Stat. 912, 28 U.S.C. § 1506. It is only where a district court would not assume jurisdiction under the Suits in Admiralty Act that we may justifiably permit the claim to be litigated here.[2]

For jurisdictional purposes, admiralty law has long viewed the nature and subject matter of a contract as controlling. Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 476, 42 S.Ct. 157, 66 L.Ed. 321 (1922); Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 26, 20 L.Ed. 90 (1870). And to serve as the basis of a suit in admiralty, the contract must be "purely" or "wholly" maritime. The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269 (1890); The Ada, 250 F. 194, 196 (2d Cir. 1918).

■ The latter rule, however, has undergone two judicial refinements. The first holds that if the non-maritime feature is merely incidental, an admiralty court will not be ousted of its jurisdiction over the entire claim. United Fruit Co. v. U. S. Shipping Bd. Merchant Fleet Corp., 42 F.2d 222, 224 (Mass.1930); Gronvold v. Suryan, 12 F.Supp. 429, 430 (W.D.Wash.1935). Included in this category would be the unloading of cargo onto a pier. Florez, et al. v. The Scotia, 35 F. 916, 917 (S.D.N.Y.1888). The second modification extends to those cases in which the non-maritime feature of the contract is separable from the maritime elements, so that it may be severed and litigated independently with-

---

1. Both plaintiff and defendant have agreed that no significant differences exist between the shipments under the 1961 contracts and those under the 1963 contract.

2. In Skibsaktieselskapet Siljestad v. United States, 180 F.Supp. 957, 958, 149 Ct.Cl. 141, 143 (1960), Judge Madden phrased the issue in this way:

> "If a claim may be sued upon in a Court of Admiralty, this court does not have jurisdiction to entertain it, even though it is a claim otherwise included

within the language of the statutes defining this court's jurisdiction. * * * The problem in cases in which the transaction has a relation to shipping by water is not the problem of interpreting the statutes conferring jurisdiction upon this court. It is, instead, the problem of determining whether, according to the history and traditions and judicial precedents relating to Admiralty jurisdiction, a Court of Admiralty would entertain the case. If it would, we cannot."

out prejudice to any party. Luckenbach Steamship Co. v. Coast Mfg. & Supply Co., 185 F.Supp. 910, 916 (E.D.N.Y. 1960); D. C. Andrews & Co. v. United States, 124 F.Supp. 362, 129 Ct.Cl. 574 (1954).

Applying these principles to the 1961 contracts between the United States and Alaska Barge, we hold that an admiralty court would neither assume jurisdiction of plaintiff's entire claim nor sever the non-maritime features of the contracts for separate adjudication. Plaintiff, therefore, is properly before this court under the provisions of the Tucker Act, 28 U.S.C. § 1491, 1964 ed.

Plaintiff's contracts contemplated ocean carriage from ports in the United States to ports in Alaska, the Pacific and Arctic Oceans, and the Bering Sea. They also entailed the overland transportation of supplies from the points of discharge to inland military stations. In view of these terrene activities, the contracts fail to satisfy the "wholly" maritime test.

Admittedly, the nautical miles between the originating ports and the discharge points were considerably greater than the statute miles between the discharge points and the inland installations.[3] But, as the plaintiff correctly points out, our decision should rest, not on mathematical computations, but on an examination of the overall subject matter of the contracts and the nature and importance of the overland services.

In its invitation for bids, the Army advised bidders of the hazardous road conditions prevalent within Alaska. Since the prospective bidders were also alerted to the fact that delivery to several of the inland sites would require the use of tank trucks, they were asked to sub-mit a plan of operation for overland beach-to-station movements, including a list of vehicles to be employed. In plaintiff's case, it was necessary to increase the total of wheeled equipment by seven 5-ton trucks in order to reach the inland military sites. The overland transportation in these trucks varied from .3 to 6.1 miles.

It is evident that these non-maritime features were not limited to the unloading of cargo onto the shore—in other words, they were not merely incidental to plaintiff's maritime obligations. To the contrary, the overland services were an integral segment of the contracts and were essential to the proper execution of the agreements.

In determining whether a court of admiralty would segregate the maritime claims arising out of plaintiff's 1961 contracts and adjudicate them separately from the non-maritime claims, we look to Judge Learned Hand's statement in Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 19 F.2d 777, 779 (1927):

A contract both maritime and non-maritime is ordinarily indivisible, so that the rights of the parties cannot be adjusted separately, those maritime in the admiralty, and the rest elsewhere. Admiralty must refuse to assume any jurisdiction over it at all, because it must either ignore the principles of the law of contract, or extend its powers beyond their constitutional scope. But in so far as the maritime obligations may, consistently with those principles, be separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto. This is clearly intimated in Turner v.

3. The following examples are illustrative:

| Originating port | Nautical miles to Alaskan discharge point | | Statute miles to inland station |
|---|---|---|---|
| Dutch Harbor, Alaska | 481 | (to Cape Romanzof) | 4.7 |
| Seattle, Wash. | 1,180 | (to Boswell Bay) | 0.3 |
| Seattle, Wash. | 1,068 | (to Yakataga) | 1.0 |
| Haines, Alaska | 83 | (to Hoonah) | 6.1 |
| Seattle, Wash. | 2,200 | (to Northeast Cape) | 2.0 |
| Seattle, Wash. | 1,852 | (to Port Moller) | 1.0 |
| Seattle, Wash. | 995 | (to Ocean Cape) | 3.5 |

Beacham, [24 Fed.] Fed.Cas. [page 350,] No. 14252, and The Pennsylvania, 154 F. 9 (C.C.A.2), though the decisions did not require such a holding. The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest.

The articles transported under plaintiff's 1961 contracts consisted of food, freight automobiles, bulk fuel oil, gasoline and other petroleum products. The General Accounting Office determined that plaintiff had overcharged the Government on 19 separate bills of lading. An examination of the disputed bills of lading, copies of which are attached as Exhibit A to defendant's amended motion, shows that in each instance where a shipment involved water and inland transportation, one bill of lading was issued to cover the entire movement. Moreover, each bill listed only one rate and only one total charge for each carriage, without any indication of an independent rate for the land movement. In the light of these facts, we conclude that an admiralty court would not sever the maritime portions of the contracts and permit them to be litigated separately from the non-maritime portions. To do so would be unduly burdensome and prejudicial to the non-maritime aspects of plaintiff's petition.

Accordingly, defendant's motion to transfer and consolidate plaintiff's claim with Admiralty Cause No. 29473 pending in the United States District Court for the Northern District of California, Southern Division, or in the alternative for summary judgment dismissing plaintiff's petition, is denied. The case is therefore returned to the trial commissioner for trial or other proceedings. Defendant is hereby granted a period of 45 days within which to file its answer to the petition.