**NORTHWEST MARINE IRON WORKS**

**v.**

**The UNITED STATES.**

**No. 148–73.**

United States Court of Claims.

Feb. 20, 1974.

Francis T. Greene, Washington, D.C., for plaintiff. Joseph J. Brigati, Washington, D.C., attorney of record, for plaintiff.

Alfred H. O. Boudreau, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before NICHOLS, KASHIWA and BENNETT, Judges.

## ON DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER

BENNETT, Judge.

■ This case arises from a Government contract [1] between plaintiff, Northwest Marine Iron Works, Inc., a corporation organized and existing under the laws of the State of Oregon, and the Naval Ship System Command of the Department of the Navy. The contract called for the "activation, repair and conversion" by plaintiff of a Navy vessel from a troop transport to a fleet ballistic missile tracking ship. As such, the contract was one for "repair" and not "construction" and, thus, was essentially maritime in nature. New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 99–100, 42 S.Ct. 243, 66 L.Ed. 482 (1922); Tucker v. Alexandroff, 183 U.S. 424, 438–439, 22 S.Ct. 195, 46 L.Ed. 264 1902. This court does not have maritime jurisdiction but plaintiff argues upon

1. Contract No. N00024–70–C–0224 (Oct. 29, 1969).

authority that nonmaritime portions of maritime contracts may in some situations be severed and considered by the Court of Claims. In other words, plaintiff says that it is the nature of the controversy and not the nature of the underlying contract that determines whether admiralty jurisdiction exists. Plaintiff says that its claim is severable from the maritime contract to which it was a party and that we have jurisdiction under the Tucker Act, 28 U.S.C. § 1491.

The actual matter here in controversy arises from an Armed Services Board of Contract Appeals (ASBCA)[2] decision denying plaintiff reimbursement for insurance premiums which, according to plaintiff, the Government was obligated to assume under the "insurance" clause, general provision 9(a) of the ·contract.

Following denial of plaintiff's claim by the ASBCA,[3] plaintiff filed this action under the second section of the Wunderlich Act, 41 U.S.C. § 322. Defendant, thereafter, filed a motion to dismiss the petition on the ground that the court lacks jurisdiction over the subject matter of the suit, or, in the alternative, to transfer the petition under 28 U.S.C. § 1506[4] to a federal district court having maritime jurisdiction. We transfer since we conclude this court has no jurisdiction of the claim.

General provision 9(a) of the contract provided as follows:

9. INSURANCE — PROPERTY LOSS OR DAMAGE — LIABILITY TO THIRD PERSONS.—(a) The Contractor shall not, unless otherwise directed in writing by the Department, carry or incur the expense of,

any insurance against any form of loss or damage to the vessels or to the materials or equipment therefor to which the Government has acquired title or which have been furnished by the Government for installation by the Contractor. The Government assumes the risks of loss of and damage to the vessels and such materials and equipment which would have been assumed by the underwriters if the Contractor had procured and maintained throughout the term of this contract, on behalf of itself and the Government, insurance with respect to the vessels and such materials and equipment for full value against pre-keel and post-keel laying risks (i) under the forms of Marine Builders Risk (Navy Form-Syndicate) policy, including the rider attached to the "Free of Capture and Seizure" clause thereof, and War Damage policy, both as set forth in the pamphlet entitled "Standard Forms of Marine Builders Risk (Navy Form-Syndicate) and War Damage Insurance Policies referred to in Vessel Contracts of the Naval Ship Systems Command," dated 23 November 1942; or (ii) under any other policy forms which the Insurance Branch, Headquarters, Naval Material [Materiel] Command, of the Department shall determine were customarily carried or would have been customarily carried by the Contractor in the absence of the foregoing requirement that the Contractor not carry or incur the expense of insurance; *provided,* that the Government does not assume any risk with respect to loss or damage compensated for by insurance or

---

2. Appeal of Northwest Marine Iron Works, Inc., ASBCA No. 16350, 73–1 BCA ¶9902 (Jan. 19, 1973).

3. Plaintiff's petition to the court contained two counts. At oral argument, plaintiff agreed to rely solely on its first count, herein addressed, and to dismiss its second count, as that count evidenced a claim purely maritime in nature and not within the jurisdiction of this court. Plaintiff filed a motion to dismiss its count II on Dec. 7, 1973.

Defendant consented to the motion and it was dismissed by the court on Dec. 10, 1973.

4. 28 U.S.C. § 1506: "If a case within the exclusive jurisdiction of the district courts is filed in the Court of Claims, the Court of Claims shall, if it be in the interest of justice, transfer such case to any district court in which it could have been brought at the time such case was filed, where the case shall proceed as if it had been filed in the district court on the date it was filed in the Court of Claims."

otherwise or resulting from risks with respect to which the Contractor has failed to procure or maintain insurance, if available, as required or approved by the Department. \* \* \*. [Appeal of Northwest Marine Iron Works, Inc., ASBCA No. 16350, 73–1 BCA ¶ 9902 at 46,347.] ·

The parties agree that it is the language of this section which is determinative of the dispute in this case. Plaintiff contended before the Board of Contract Appeals and before this court that general provision 9(a) imposed upon the Government a duty either to provide or to procure the types of insurance customarily carried by plaintiff under similar contracts. Plaintiff had carried Ship Repairer's Legal Liability (SRLL) insurance on all its commercial and Government ship repair and conversion contracts since January 1, 1967. Plaintiff did not include the cost of such insurance in its bid price since it believed it would be found to have "customarily carried" such insurance for purposes of general provision 9(a). The premiums payable on plaintiff's SRLL policy were based on a rate-times-gross-receipts formula. Plaintiff normally included in its bids a factor representing this formula in order to cover the cost of the SRLL premium allocable to the contract. Plaintiff contacted the Government shortly after it entered into the contract in order to determine for certain whether defendant would act as a self-insurer or whether it would direct plaintiff to procure SRLL insurance. Plaintiff felt such insurance was essential and intended to continue to carry its SRLL insurance unless the Government informed it of its intention to provide such coverage as a self-insurer. The Government responded to plaintiff's inquiry on May 14, 1970, more than 5 months after plaintiff's initial inquiry. In its response, the Government denied responsibility for SRLL coverage. Plaintiff accordingly continued to carry such insurance and later brought action for a constructive change to the Board of Contract Appeals. The board found that plaintiff's SRLL coverage was "considerably broader than the SRLL coverage usually maintained by ship repairers," 71–1 BCA at 46,348, and that the Government was not obligated to assume such risk under the insurance clause of the contract. Equitable adjustment was denied. Plaintiff now brings suit in this court alleging that the board made an error of law in its interpretation of general provision 9(a) of the contract and that the decision lacks finality under 41 U.S.C. § 322.

In its argument, plaintiff calls the court's attention to dicta in D. C. Andrews & Co. v. United States, 124 F. Supp. 362, 363, 129 Ct.Cl. 574, 576 (1954). In that decision, this court noted that "contracts to *procure* insurance for a vessel are non-maritime and not cognizable in a court of admiralty." [Emphasis in original.] This distinction, between a contract to procure insurance and a contract of insurance, was first set out in Marquardt v. French, 53 F. 603 (S.D.N.Y.1893). There, the court dismissed an action brought in admiralty on the ground that it concerned a contract to procure insurance and not a contract of insurance. The court drew its distinction as follows:

> \* \* \* The contract of insurance, indeed, is a maritime contract, and as such is within the jurisdiction of an admiralty court. But a contract or obligation to procure insurance, such as I find this obligation to have been, is not a contract of insurance, nor is it a maritime contract. \* \* \*. [53 F. at 606.]

Plaintiff makes its argument with full knowledge of the rule set out by the court in Alaska Barge & Transport, Inc. v. United States, 373 F.2d 967, 179 Ct. Cl. 216 (1967). In that case, Chief Judge Cowen, speaking for a unanimous court, detailed the procedure this court must follow in cases similar to the present one. The Chief Judge wrote that:

> \* \* \* Whenever presented with a threshold question as to the propriety of our adjudicating a claim having

maritime elements, it is our responsibility to view the facts as would a court of admiralty. If admiralty jurisdiction is found to exist, then we must transfer the case to its proper forum. Act of September 13, 1960, 74 Stat. 912, 28 U.S.C. § 1506. It is only where a district court would not assume jurisdiction under the Suits in Admiralty Act that we may justifiably permit the claim to be litigated here [footnote omitted]. [179 Ct.Cl. at 220, 373 F.2d at 970.]

The same rule was expressed a few years earlier by Judge Madden in Skibsaktieselskapet Eiljestad v. United States, 180 F.Supp. 957, 958, 149 Ct.Cl. 141, 143 (1960):

> If the claim may be sued upon in a Court of Admiralty, this court does not have jurisdiction to entertain it, even though it is a claim otherwise included within the language of the statutes defining this court's jurisdiction. * * *

■ Accordingly, before this court can reach the merits of plaintiff's Wunderlich Act claim it must first determine whether its jurisdiction extends to cover this controversy. To do this, it is necessary to look closely at the language of general provision 9(a) in order to determine whether that section evidences a contract "to procure or provide" insurance, as plaintiff contends it does, or whether that section merely details, as defendant contends, a contract of insurance. If defendant is correct in its assertion, this case will have to be dismissed or transferred pursuant to 28 U.S.C. § 1506.

For reasons hereafter set out, we reach the following conclusions: first, that general provision 9(a) evinces a contract of insurance in that the Government agreed to act as a self-insurer for purposes of this contract; second, that no contract to procure or provide insurance was ever contemplated or entered into by the parties; third, that this court lacks jurisdiction of the case;

and, fourth, that the matter should be transferred to a federal district court having maritime jurisdiction, 28 U.S.C. § 1506; see Buck Kreihs Co. v. United States, 427 F.2d 770, 772, 192 Ct.Cl. 297, 301 (1970), for such resolution on the merits, if any, as that court may deem appropriate in admiralty.

■ Plaintiff contended in its brief and at oral argument that the Government obligated itself to act as a self-insurer, then refused to do so, forcing plaintiff to purchase SRLL insurance privately. This argument implies that SRLL insurance was necessary for a contract such as the one applicable in this case. This interpretation, however, is incorrect. Nowhere in general provision 9(a) is there any language obligating the Government to provide particular types of insurance to protect plaintiff. Rather, general provision 9(a) clearly and unequivocally evidences the Government's intention to provide insurance coverage itself by acting as a self-insurer on the contract. The first sentence of general provision 9(a) provides that:

> The Contractor shall not, unless otherwise directed in writing by the Department, carry or incur the expense of, any insurance against any form of loss or damage * * *. [73–1 BCA at 46,347.]

The second sentence is just as explicit. It provides that:

> * * * The *Government assumes the risks of loss of and damage to* the vessels * * * which would have been assumed by underwriters * * * (i) under the forms of Marine Builders Risk * * * policy, * * * or (ii) under any other policy forms which the Insurance Branch, Headquarters, Naval Material [Materiel] Command * * * shall determine were customarily carried or would have been customarily carried by the Contractor in the absence of the * * * *requirement that the*

*Contractor not carry or incur the expense of insurance; * * *.* [Emphasis added.]

The only possible legal conclusion which can be drawn from the above-quoted language is that the Government, acting as a self-insurer, directed its contractor not to incur any insurance obligations without specific written authorization. The Government explicitly covenanted that it would provide insurance coverage necessary under the contract and nothing in the record indicates otherwise. Plaintiff's argument that the SRLL policy was necessary for complete insurance protection in this case flies in the face of the language of the general provision instruction that plaintiff not incur any insurance obligations "unless otherwise directed in writing * * *." That clause can only be interpreted as establishing a condition precedent without which plaintiff could not have incurred reimbursable, expense for SRLL coverage under the contract. Plaintiff's interpretation renders the provision for a Government determination meaningless, as the board decision said:

> * * * Under appellant's interpretation, the Government would be obligated to act as insurer with respect to any risks customarily covered by appellant's insurance regardless of whether the Government had made any determination that it intended to act as an insurer with respect to those risks, or even had knowledge of the risks. We consider such an interpretation to be unreasonable and inconsistent with the terms of the clause. [73–1 BCA at 46,353.]

 Plaintiff's argument also ignores another condition precedent found in the "customarily carried" language of clause 9(a)(ii). Plaintiff appears oblivious to the requirement that the "Insurance Branch, Headquarters, Naval Materiel [Materiel] * * * *shall determine * * * *" whether particular types of insurance were "customarily carried." Absent such a determination, plaintiff had no right under the contract to incur the expense of SRLL insurance. Plaintiff's effort to persuade the court to adopt its reading of general provision 9(a) violates the rule that all language of a contract should be given effect and no terms should be construed as meaningless. *Astro-Space Laboratories, Inc. v. United States*, 470 F.2d 1003, 1010, 200 Ct.Cl. 282, 295 (1972); *Jamsar, Inc. v. United States*, 442 F.2d 930, 934, 194 Ct.Cl. 819, 826 (1971). Construction of the terms of a contract, like construction of a statute, should "avoid absurd and whimsical results." *See* Anderson v. United States, Ct.Cl. No. 480–569, 490 F.2d 921. "* * * [A]n interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; * * *." *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 979, 169 Ct.Cl. 384, 395 (1965); *Ball State Univ. v. United States*, Ct.Cl. No. 381–72, 488 F.2d 1014 (Dec.1973).

Defendant's motion to dismiss or to transfer is granted and denied as follows: it is ordered that the case be and it is transferred, 28 U.S.C. § 1506, to the United States District Court for the District of Oregon, which has maritime jurisdiction under 46 U.S.C. § 742. Further proceedings in the United States Court of Claims are terminated.