**KUEHNE & NAGEL (AG & CO)**

v.

**GEOSOURCE, INC.**

**C.A. No. H–83–5913.**

United States District Court, S.D. Texas, Houston Division.

Jan. 6, 1986.

James J. Sentner, Jr., Haight, Gardner, Poor & Havens, Houston, Tex., for plaintiff.

G. Wesley Urquhart, Vinson & Elkins, Houston, Tex., for defendant.

## ORDER

CARL O. BUE, Jr., District Judge.

On September 13, 1985 the Court deferred defendant's motion to dismiss, and granted plaintiff's motion to amend complaint wherein plaintiff invoked admiralty jurisdiction. Thereafter, pursuant to the September 13 Order, defendant re-urged its motion to dismiss. After prudent consider-

ation, the memoranda of the parties, as well as the facts and circumstances surrounding this matter, the Court is of the opinion that defendant's motion should be denied for the reasons discussed below.

### Facts and Argument

Plaintiff, a German corporation, filed suit against defendant, a Delaware corporation with its principal place of business in Texas, claiming that defendant, as an alter ego of Ucamar Shipping and Transportation (Cayman) Ltd., (hereinafter Ucamar), a Cayman Islands corporation, was liable for an alleged breach of an ocean contract of affreightment by Ucamar.

Defendant argues that this Court lacks jurisdiction because no diversity exists, and/or that neither the tort nor contract claim urged by plaintiff falls within this Court's admiralty jurisdiction.

### Diversity Jurisdiction

■ For jurisdiction to be bestowed under 28 U.S.C. § 1332, diversity of citizenship must be perfected between all plaintiffs and defendants. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 167, 2 L.Ed. 435 (1806). Moreover, a corporation is a citizen of the foreign country wherein it was incorporated for purposes of diversity jurisdiction. *National Steamship Co. v. Tugman,* 106 U.S. 118, 1 S.Ct. 58, 27 L.Ed. 87 (1882).

At the outset defendant argues, in support of its claim that no diversity jurisdiction exists,[1] that this Court should follow the teachings of *Panalpina Welttransport, G.M.B.H. v. Geosource, Inc.,* 764 F.2d 352 (5th Cir.1985). In *Panalpina,* the Fifth Circuit affirmed Judge McDonald's dismissal for lack of diversity jurisdiction in a case involving Geosource, Inc. and Ucamar Shipping Co., (Cayman), Ltd. as defendants. The Court reasoned that Ucamar's place of incorporation (Cayman Islands) could not be ignored as suggested

by the plaintiffs. As a result, both plaintiffs and one defendant were alien corporations, thereby destroying diversity jurisdiction.

■ Applying the law to the facts in the instant suit, plaintiff is precluded from bringing the suit on the basis of diversity jurisdiction. The plaintiff in the present case has sued Geosource, Inc., (the parent corporation) based on an alter ego theory, complaining of acts of one of its subsidiaries, Ucamar. Although the plaintiff has not brought this suit against Ucamar, nevertheless, "... the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity." *Panalpina,* 764 F.2d at 355, *citing Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553 (5th Cir.1985). In effect, an alien corporation is suing an alien corporation. Therefore, diversity jurisdiction does not exist.

### Admiralty Jurisdiction

#### A. Contract Claim

Defendant argues that plaintiff's contract claims are mixed, and, as a result, are not divisible. Consequently, admiralty jurisdiction does not exist. Plaintiff argues that this Court should apply its admiralty jurisdiction because the cause of action arose as a result of a breach of the maritime portion of the mixed contract.[2] Further, plaintiff argues that the overland transportation aspect of the contract was merely incidental.

■ In order for admiralty jurisdiction to extend to contracts, the general rule is that the agreement must be wholly maritime. *The ECLIPSE,* 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890). *See generally* 1 Benedict on Admiralty § 183, at 1–6 (1981).

---

1. Defendant, in its counterclaim filed on March 8, 1985 and reiterated on March 15, 1985, claims jurisdiction under 28 U.S.C. § 1332, but asserts here that none exists.

2. Plaintiff alleges that the ultimate issue is whether or not the ocean portion of the contract was breached. However, this issue assumes jurisdiction, and is the ultimate issue to be decided at a trial on the merits.

If a contract is mixed, however,[3] maritime jurisdiction may nonetheless attach if the non-maritime elements outlined in the agreement are not substantial (or are incidental) to the maritime elements, or if they are separable from the maritime elements. *Flota Maritima Browning de Cuba v. Snobl,* 363 F.2d 733, 735 (4th Cir.), *cert. denied,* 385 U.S. 837, 87 S.Ct. 82, 17 L.Ed.2d 71 (1966). In other words, the Court must determine whether or not the non-maritime elements of the contract are substantial and not merely incidental to the maritime elements, or if the maritime elements are subject to separate adjudication. As stated in *Eastern Massachusetts Street Railway v. Transmarine Corp.,* 42 F.2d 58, 63–64 (1st Cir.), *cert. denied,* 282 U.S. 883, 51 S.Ct. 86, 75 L.Ed. 779 (1930):

> it is undoubtedly true that, where an instrument embodies a contract containing provisions, some of which are maritime and some nonmaritime, which are so interrelated as to be indivisible and to render a separate adjustment of those that are maritime impracticable, admiralty will not take jurisdiction. But where the respective provisions of the contract are divisible and the maritime obligations may be separately adjudicated, admiralty may take jurisdiction and enforce them.... The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest.

(*quoting Compagnie Francaise de Navigation a Vapeur v. Bonnasse,* 19 F.2d 777, 779 (2d Cir.), *cert. denied,* 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421 (1927)). *See Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468 (1st Cir.1985); *Jack Neilson, Inc. v. Tug Peggy,* 428 F.2d 54 (5th Cir. 1970), *cert. denied,* 401 U.S. 955, 91 S.Ct.

973, 28 L.Ed.2d 238 (1971). However, "[i]t is fundamental that the mere inclusion of maritime obligation in a mixed contract does not, without more, bring nonmaritime obligations within the pale of admiralty law." *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1231 (5th Cir.1985). In essence, in determining whether or not admiralty jurisdiction is applicable to the contract in this suit, the Court must look to the characteristics of the contract; that is, to the nature and subject matter of the contract. *New Jersey Steam Navigation Co. v. Merchants' Bank,* 47 U.S. 343 (1848).

*1. Substantial or incidental non-maritime elements*

■ The contract at hand involved an intermodal transportation of goods on sea[4] and land. Specifically, the bills of lading called for the transportation by sea of cargos consisting of steel plate and polyvinylchloride from Belgium to Turkey. Thereafter, the cargos were to be transported by land to cities in Iran. Defendant asserts, and the plaintiff does not dispute, that the overland journey would range from 800–1000 miles. *See Alaska Barge and Transport, Inc. v. United States,* 179 Ct.Cl. 216, 373 F.2d 967 (1967) (wherein the court concluded that overland transportation of .3 miles to 6.1 miles was substantial). Accordingly, after examining the provisions of the entire contract the Court determines that the non-maritime aspects to the contract are substantial and not incidental.

*2. Severability*

■ As stated earlier, if the maritime elements contained in the "mixed" contract are subject to separate adjudication, then admiralty jurisdiction can attach to that extent. *Bonnasse,* 19 F.2d at 779; *Eastern Massachusetts Street Railway,* 42 F.2d 58 (1st Cir.1930). However, in this

---

**3.** A "mixed" contract is one consisting of a maritime and non-maritime aspect which may or may not be divisible.

**4.** Plaintiff contends that the maritime portion of the contract was breached. However, by its

Second Amended Complaint, plaintiff alleges that the cargo arrived at its destination, but was not discharged and carried overland. The Court concludes that, if there was a breach, it occurred as to both aspects of the contract.

case, the Court cannot sever the maritime from non-maritime claims. This assessment is based on the fact that each bill of lading contains a fixed, single freight rate for sea carriage, as well as overland transportation. Since there was no attempt to itemize the maritime and non-maritime services separately, the Court cannot distinguish between the two sections.[5] *See Evita Marine Charters*, 763 F.2d at 471, *citing, Outbound Maritime Corp. v. P.T. Indonesian Consortium*, 582 F.Supp. 1136, 1142 (D.Md.1984); *Alaska Barge*, 373 F.2d at 972.

Accordingly, the Court is of the opinion that since the non-maritime elements are substantial, and since the maritime elements are not subject to separate adjudication, the Court cannot assert its admiralty jurisdiction based on a maritime contract theory.

### B. *Tort Claim*

Plaintiff contends that defendant made certain misrepresentations wherein it would provide financial assistance, expertise, and personnel to Ucamar. These misrepresentations were made through advertisements and press releases, as well as during seminars which occurred in Hamburg, Germany in 1982. *See* Second Amended Complaint at 6–7. Plaintiff argues that admiralty jurisdiction should apply, stating that as a result of the fraudulent misrepresentations plaintiff entered into contracts of affreightment with defendant. Defendant asserts that maritime jurisdiction should not apply since the requisite tests of situs and nexus have not been met.

■ According to the Supreme Court's rulings in *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) and *Foremost Insurance Co. v. Richardson*, 457

U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), this Court's admiralty jurisdiction will apply in tort cases if the alleged wrong has a maritime locality *and* bears a significant relationship to traditional maritime activity. *See Casaceli v. Martech International, Inc.*, 774 F.2d 1322 (5th Cir.1985); *Smith v. Pan Air Corp.*, 684 F.2d 1102, 1108 (5th Cir.1982); *Sohyde Drilling & Marine Co. v. Coastal Gas Producing Co.*, 644 F.2d 1132, 1135 (5th Cir.), *cert. denied, sub nom Valero Energy Corp. v. Sohyde Drilling & Wakover, Inc.* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981).

### 1. *Locality*

■ In analyzing the first prong of the *Executive Jet* test, the Court must look to "where the alleged [tort] took effect," rather than where the allegedly tortious acts or omissions occurred. *Executive Jet*, 409 U.S. at 266, 93 S.Ct. at 503. The Fifth Circuit has applied this analysis to products liability cases, *see Jig The Third Corp. v. Puritan Marine Insurance Underwriters Corp.*, 519 F.2d 171 (5th Cir.1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100 (5th Cir.1970), as well as asbestos cases. *See Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634 (5th Cir.1985); *Harville v. Johns-Manville Products Corp.*, 731 F.2d 775 (11th Cir. 1984). *See also Archawski v. Hanioti*, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956); *Pino v. Protection Maritime Insurance Co., Ltd.*, 599 F.2d 10 (1st Cir.1979) *cert. denied*, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); *Carroll v. Protection Maritime Insurance Co., Ltd.*, 512 F.2d 4 (1st Cir.1975) (wherein the First Circuit Court held that an action brought by a seaman and commercial fisherman against marine protection and indemnity insurers

---

**5.** Moreover, while plaintiff's policy argument is persuasive and

   [a]lthough it is certainly true that the lines of admiralty jurisdiction are not ship-shape, extending jurisdiction to this [maritime contract theory] would not further the purposes of the original limited grant of admiralty jur-

isdiction. The initial grant served not only to further maritime commerce, but also to protect litigants by providing a uniform source of law to vessels traveling in interstate commerce and by assuring an adequate forum. *Proleride Transport Systems, Inc. v. Union Carbide Corp.*, 498 F.Supp. 680, 682 (D.Mass.1980).

claiming intentional interference with plaintiffs' maritime employment was so interwoven with a maritime contractual relationship as to fall within admiralty jurisdiction); *Orient Mid-East Lives, Inc. v. Albert E. Bowen, Inc.,* 255 F.Supp. 627 (S.D.N.Y. 1966) (wherein the Court held that inducement of a breach of a maritime contract was a maritime tort.) *Compare State of Louisiana ex rel. Guste v. M/V TEST-BANK,* 752 F.2d 1019 (5th Cir.1985) (en banc), *petition for cert. filed,* 53 U.S.L.W. 2412 (U.S. February 26, 1985, No. 84–1808) (wherein the Court declined to abort the physical damage requirement for recovery of economic loss due to an unintentional tort).

In the instant controversy, the alleged misrepresentations made by the defendant caused the plaintiff to enter into the "mixed" contract which was allegedly breached. As a result, the cargo remained on board the vessels awaiting discharge. Although the alleged misrepresentation occurred on land, the "effect" of these misrepresentations was manifested at sea.[6] Accordingly, consistent with the rationale of the authorities heretofore cited, the Court determines that plaintiff has met the first prong of the jurisdictional test for a maritime tort.[7]

### 2. *Significant Relationship*

In analyzing whether the plaintiff's claim bears a significant relationship to traditional maritime activity, the Fifth Circuit has outlined four factors to be considered. *Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.1973), *cert. denied sub nom Chicot Land Co. v. Kelly,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). Those factors are: (a) the functions and roles of the parties; (b) the types of vehicles and instrumentalities involved; (c) the causation and type of injury; and (d) the traditional con-

cepts of the role of admiralty law—that is, "admiralty's preeminent interest in protecting navigation on major interstate waterways . . ." *Harville,* 731 F.2d at 783, *citing Kelly v. Smith,* 485 F.2d at 526.

#### (a) *Function and role of the parties*

In determining this factor, the Court must look to maritime functions of each of the parties. *Harville,* 731 F.2d at 784.

In the case before the Court, the defendant is a joint venture transportation company which is engaged in common carriage of goods by water and overland trucking from Europe to the Middle East. The plaintiff operates a business of freight forwarding and consolidation of cargo for shippers.

Since both parties are involved in the maritime trade, this factor bolsters the argument for invocation of admiralty jurisdiction.

#### (b) *Types of vehicles and instrumentalities involved*

In this case, the vehicles involved were ships lying in navigable waters, as well as trucks. Pursuant to the "mixed" contracts, the vessels were to cross navigable waters, taking the cargo to various ports. At that point, the cargo was to be transported overland by truck to particular destination points. In essence, the vessels' involvement was corporeal, and not merely attenuative to the contractual relationship between the parties. Accordingly, the use of vessels is strong support for the application of admiralty jurisdiction.

#### (c) *Causation and type of injury*

At the outset the Court has analyzed the maritime nature of the causation and injury. In considering this factor, the Court has observed the alleged land-based misrepresentations which resulted in plaintiff

---

**6.** Not only did the alleged tort take effect on a vessel, but, as in *Carroll,* 512 F.2d 4, the intentional tort was so interwoven with a maritime contractual relationship (at least in part) as to fall within admiralty jurisdiction.

**7.** Defendant argues that plaintiff's attempt to invoke admiralty jurisdiction should fail because plaintiff has not alleged that any of the fraudulent acts occurred on navigable waters, or that any damages suffered took place on navigable waters. This Court does not agree. *See* Second Amended Complaint ¶ 10, 12, 17,

contracting with defendant for the carriage of goods by sea and land, and the subsequent alleged breach of that contract of affreightment thereof resulting in economic injury. After careful consideration, the Court determines that this is yet another factor to be weighed in favor of application of maritime law.

### (d) *Traditional concepts of the role of admiralty law*

"Of the four factors set out in *Kelly*, this is clearly the most important." *Harville*, 731 F.2d at 785.

The instant case involved an alleged breach of a contract of affreightment and a cause of action for fraud arising out of that breach. Goods were carried by sea a great distance—specifically, from Europe to the Middle East. In essence, there is a significant relationship to commercial maritime activity—the connection with navigable waters was not merely fortuitous.

After examining the relevant law outlining the purpose of maritime law, this Court concludes that this factor weighs heavily in favor of applying admiralty jurisprudence. *See Foremost Insurance Co.*, 457 U.S. at 674–77, 102 S.Ct. at 2658–59 (wherein the Court discussed the purposes of maritime law in ruling that a significant relationship to commercial maritime activity was not necessary for application of admiralty jurisdiction). In sum, admiralty jurisdiction based on a maritime tort theory will be applied.

### Conclusion

While this case does not fall within this Court's diversity jurisdiction, or this Court's admiralty jurisdiction by virtue of a maritime contract, it does fall within this Court's admiralty jurisdiction under plaintiff's asserted maritime tort theory. Accordingly, defendant's Motion to Dismiss will be denied, and this Court will apply admiralty jurisprudence to this cause of action.

It is so ORDERED.